**HANSON ET AL. vs. CITY COUNCIL OF LAFAYETTE.**

EASTERN DIS.
*May,* 1841.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

HANSON ET AL·
*vs.*
CITY COUNCIL OF
LAFAYETTE.

| 18L 295|
| 48  541|

The decision of a jury of twelve " inhabitants" or land-holders, under the act of 15th February, 1808, respecting " the police of the shores of rivers," directing the construction *of a levee* for the protection of a Faubourg, of certain dimensions and fixing its location, is conclusive on the necessity and propriety of the measure, and the city council have the power to cause the execution of the work.

In a controversy about the location of a levee, parol evidence will be received to show *where* the old levee stood, and the new one is proposed to be; and also that the adverse party was trespassing on a *public place,* administered for the public *use.*

The use of the banks of navigable rivers, is a servitude for the public use, or common utility; and every proprietor adjacent to the shores of a navigable river is bound to leave sufficient space for levees, roads [streets] and other public or common works.

The charter of the city of Lafayette, gives the city council the entire control of the streets, levees, wharves, &c.; confers on the corporation the same powers granted to the city of New Orleans over these objects; and it is subrogated to the powers of the police jury of the parish of Jefferson, within the limits of the city.

No man or individual proprietor of the banks of a navigable river, can appropriate them exclusively to his own use, and at his pleasure construct levees or erect buildings and works that will obstruct the free use of its banks *to all men,* although the right of property is in him as proprietor of the adjacent lands.

This suit commenced by injunction. The plaintiffs allege they are owners and possessors of houses and lots in the city of Lafayette; having been put in possession by a sworn surveyor, and their lines and boundaries pointed out to them by him, which possession they have held for upwards of fifteen years; and that they have built their houses and made improvements on their lots and within their boundaries respectively, but that the President and Board of Council for said city passed an illegal, arbitrary and oppressive ordinance, ordering the demolition and destruction of their houses, stores and buildings, and directing the municipal officers to carry said ordinance into effect. They further allege that the city surveyor is proceed-

EASTERN DIS.
*May*, 1841.

HANSON ET AL.
*vs.*
CITY COUNCIL OF
LAFAYETTE.

ing to carry the said illegal and oppressive ordinance into effect, by which they will be greatly damaged and injured by the destruction of their buildings, improvements and other property, and deprived of the possession of their lots, &c. The petitioners then set out, each one his respective house and lot by a particular description and specification, and the whole conclude with a prayer for an injunction to restrain and prohibit the proceedings of the City Council; and that the injunction when granted, be made perpetual by a judgment of the court, and that the city of Lafayette be condemned to pay them 10,000 dollars damages.

The defendants pleaded a general denial; and expressly averred that they possessed the power to make all necessary and needful regulations respecting streets, levees, roads, ditches, bridges, &c.; and to repair old levees, and lay out and construct new ones, and fully empowered and authorized by law to take such steps and use the means necessary for the accomplishment of said objects and purposes. They pray that the injunction be dissolved with damages.

Upon these pleadings and issues the case was tried before the court.

On the trial, the plaintiffs showed they had been in the undisturbed possession of their respective lots and houses, and in the occupation of their stores for a great length of time over a year, and they urged that as they stood in the relation of possessors towards the corporation that they could not be disturbed or ousted in a proceeding which their counsel contended was in the nature of a possessory action.

The City Council, however claimed to exercise the powers and duties conferred by law on the police juries in the several parishes, and particularly the police jury of the parish of Jefferson, which was clothed with extensive powers in relation to making, repairing and keeping up the levees within the limits of the parish.

The evidence showed that the plaintiffs in injunction had established themselves on lots and erected brick buildings for

dwellings and stores with other improvements thereon, *outside*
of the front street or highway, and between it and the water;
and that in some places they were on the site of the old levee
and between it and the river. The river had made encroach-
ments or abrasions on the bank opposite or in front, and the
water at high winds and tides beat over the levee in places;
thereby endangering the inhabitants by an overflow.

The City Council passed an ordinance ordering a new levee
to be made, and directed their surveyor to mark out and make
a plan of it. He did so; projecting one with a base of sixty
feet, which was approved by a jury of land-holders. The city
authorities were proceeding under this ordinance, so much
complained of by the plaintiffs, to take down several of these
houses and clear the bank of the river. The new levee cover-
ed the ground, and was required to be made over the lots and
space of ground where the buildings and improvements, about
to be demolished, had been erected. The evidence showed
the absolute necessity of placing the levee here to preserve the
city and country from an overflow.

The plaintiffs contested the right and power of the City
Council to make the levee and place it where they thought pro-
per; and further contended that they must be indemnified for
their property taken or destroyed in the establishment of the
new levee.

Notwithstanding this suit commenced by an injunction prohi-
biting the City Council from proceeding in their work of con-
structing a new levee, deemed necessary for the safety of the
inhabitants and their property, and the issue involved the ques-
tion of the right of the corporation to demolish the buildings
and improvements of the plaintiffs in order to clear the banks of
the river and to place a new levee thereon, yet the parties seem
to have viewed the case in the light of *a possessory action:*
for among the evidence at page 18 of the record the following
agreement appears:

"It is agreed that every thing but the question of *possession*
be reserved."

EASTERN DIS. The record contains a mass of testimony taken to the whole
*May*, 1841. case, embracing every thing connected with the subject, ex-
HANSON ET AL. cept as to the actual value of the buildings to be pulled down
*vs.*
CITY COUNCIL OF and property taken for the new levee. The description and
LAFAYETTE. position of the buildings and plans of levee, street, road, banks
of the river, &c., were produced in evidence.

The District judge considered the case as a possessory ac-
tion ; that he had no middle course to pursue, but either to
perpetuate or dissolve the injunction. He however considered
further that the property of the plaintiffs could not be taken
from them for the new levee and works contemplated by the
City Council *without compensation,* which should be paid or
tendered before expropriation ; La. Code, arts. 2604, 2606,
2607.

There was judgment perpetuating the injunction and the de-
fendants appealed.

*Roselius, Pierce & Latour,* for the plaintiffs.

*Eustis, & M^cKinney,* for the defendants, made the follow-
ing points in argument :

1. The law considers the banks of rivers merely in relation
to position and not in reference to occupation or ownership.

2. The right of use in the banks of rivers is a matter of pub-
lic administration which the State exercises by delegation to
different municipal bodies. The exercise of this power is not
simply a matter of municipal administration but a portion of
the sovereign authority.

3. On the borders of the Mississippi the levees form the
banks ; La. Code, art. 448. The use is in the public ; Idem,
446.

4. The use of the banks of rivers is a servitude imposed for
public utility—every thing in relation to it is determined by
laws or particular regulations ; Idem, 660, 661.

5. The law does not determine by an uniform rule the extent
of the levees or the space on the bank required for the public

use. This is a matter of *regulation* and must depend upon the various localities, soil and currents of rivers in different parts of the State.

EASTERN DIS.
*May*, 1841.

HANSON ET AL.
*vs.*
CITY COUNCIL OF
LAFAYETTE.

6. The power of regulating the extent of this servitude, which changes with the changes of rivers, is vested in the police juries; 1 Moreau's Digest, 651, verbo levees.

7. All lands on the borders of rivers are held subordinate to this right, which is a servitude, and the exercise of it is not an expropriation or a trespass, but a vindication of a public paramount right; Macarel, lib. 9, p. 373; 5 La. Rep., 422; 3 Idem, 567; act of 1830 concerning levees; act of April, 1833; vide 3 Kent's Commentaries, 424.

8. The powers and authority of police juries relating to levees are vested by law in the defendants; act of 12th March, 1836, sec. 9; acts incorporating the city of Lafayette.

9. Whenever a right of property to the exclusion of the public use is set up by any riparian proprietor, or whenever an exemption is set up in derogation of this general servitude, a title to that effect must be shown from the sovereign, and no possession will avail against it, unless such possession be immemorial; 3 Martin, N. S., 298 et seq.; Novissima Recop., lib. 11, tit. 8, law 4.

10. It is incumbent on the plaintiffs affirmatively to show their title to the exemption they claim, and it is not by virtue of a mere occupancy that any impediment to the public right can be created.

11. In a case like this, a court will not interfere by injunction to prevent the execution of a public work, which the proper authority has determined to be necessary, and which the public safety requires should be executed without delay or obstruction.

12. The different bills of exception not having been called before the court in argument by the counsel, may be considered as abandoned, or as merged in the principles embraced by the argument of the case.

EASTERN DIS.
May, 1841.

HANSON ET AL.
vs.
CITY COUNCIL OF
LAFAYETTE.

*Garland, J.* delivered the opinion of the court.

The plaintiffs allege they are the owners and proprietors of certain lots of ground, with the improvements and buildings thereon, situated in the city of Lafayette, and have been in quiet possession thereof for upwards of fifteen years. That before they erected the stores and buildings on their lots they called on a sworn surveyor of the State, there being then none in the parish of Jefferson, to show them their lines and boundaries on which to build. They further represent, that the City Council of Lafayette have passed an arbitrary and oppressive ordinance or ordinances, directing the municipal officers to forcibly enter, turn them or their tenants out of their stores and houses, and that Benjamin Buisson, surveyor of the said city, and other persons are about to execute the order or orders, whereby they will be irreparably injured, and a pecuniary loss of more than $300,000 will be sustained. The petition then proceeds to the description of each lot of ground, naming the person to whom it belongs: Which lots are all in what are generally called the suburbs Lafayette and Livaudais, fronting on Levee street and running from it across the levee and batture outside of it, to the low water mark, all of which will appear from their titles and plans.

They further allege they have requested the City Council and their officers to desist from their illegal acts, but they persist in their determination to pull down the houses and take the ground; wherefore they pray they may be enjoined from destroying their property and disturbing them in the possession and enjoyment of it, which injunction they pray may be made perpetual and ten thousand dollars damages be allowed them.

To this petition and injunction the defendants answered by a general denial, and an averment that the City Council have power by law to make all necessary rules and regulations respecting the streets, roads, ditches, bridges and highways; also to repair old levees and construct new ones when necessary, and have authority to take such measures as may be proper to

effect those objects.  They pray a dissolution of the injunction and for twenty thousand dollars damages.

The evidence shows, that the plaintiffs have acts of sales, and are possessors of the lots and buildings mentioned in their petition, for different periods.  Some for two years, others for fourteen or fifteen years, and others for shorter periods.  It is also shown, that the President of the Council had notices served on him, requiring, that within thirty days they remove all the incumbrances, obstructions and buildings on the line of the levee, ordained by the Council, in front of and through their property, according to the plan made by the City Surveyor, who was ordered to show them the lines, when called on; and it is also shown, that a number of houses were demolished, and those belonging to the plaintiffs threatened with demolition. Buckman, a witness for the plaintiffs, after stating various facts, confirming the previous statements of other witnesses in relation to their possession and rights, says, the banks of the river have been gradually washing away, in consequence of the action of the water, produced by the steamboats passing near the shore, but the condition of the levee has generally been good until the previous high stage of water, when it ran over in several places. The evidence on the part of the defendants shows, that on the 18th of June, 1840, the Committee of the Council on Streets and Landings, reported to that body, they had inspected the levee in front of the city, and find it in a precarious and weak condition on its whole line, but very much so in front of the faubourg Lafayette.  That it has been broken down by being travelled on by drays, carts and other vehicles, and in many places the water flows over it.  After a thorough examination, the Committee say, the safety of the cities of Lafayette and New Orleans requires a new and more substantial levee should be constructed as soon as practicable.  Upon the presentment of this report, the President of the Council was authorized to summon the legal number of freeholders, to examine and inspect the old levee, and report, whether a new one was necessary.  Twelve freeholders were summoned, among whom were

EASTERN DIS. *May*, 1841.

HANSON ET AL. *vs.* CITY COUNCIL OF LAFAYETTE.

Hanson and McGarey, two of the plaintiffs. This jury met, and on the 2d of July, 1840, unanimously reported, that a new levee was necessary, and required along the whole front of the city. They say it can be immediately commenced in front of the Nuns' Faubourg, but advise a postponement as to fixing the line in front of the Faubourgs Lafayette and Livaudais until August, when the water shall be lower, and it can be better designated. On the presentation of this report, the City Surveyor was directed to make a plan and specifications of the levee in front of the Nuns' Faubourg, and means were adopted to commence it forthwith. On the 6th of August, 1840, the jury again met for the purpose of designating the line of the levee in front of the Faubourgs Lafayette and Livaudais. After inspection, they were still unanimous as to the necessity of the new levee, and ten of the jurors concurred in the line, its base to be sixty feet in width "from the break of the bank of the river," wherever that distance can be obtained without encroaching on the street. The levee to be run in a straight line on each square, commencing at St. Andrew street, where it was to connect with the levee in front of the Nuns' Faubourg, and extend to the upper limit of the city. To this report, Messrs. Hanson and McGarey dissented, on the ground, that sixty feet base was more than necessary. They thought, forty feet were sufficient, to be measured from low water mark, extending to the top of the bank, and they say, a levee so placed will be sufficiently durable and substantial. We cannot forbear remarking here, that Messrs. Hanson and McGarey, when the levee was to be made in front of the Nuns' Faubourg, did not think sixty feet base too much, but in front of the Faubourg Lafayette, where, according to the evidence, the levee was worse than any where else, forty feet were sufficient, and they were to be taken from low water mark, on a bank gradually wearing away by the abrasion of the river. What influence their interests had upon their judgments, it is not necessary now to decide. The Council directed the levee to be made in conformity with the recommendation of the majority of the jury, and shortly after

commenced the work; the President and Surveyor being vested with the necessary authority to remove obstructions and incumbrances. To arrest the Council in the execution of this ordinance, is the purpose of this injunction.

EASTERN  DIS.
May,  1841.

HANSON  ET  AL.
vs.
CITY COUNCIL OF
LAFAYETTE.

From the plans of the Faubourgs Lafayette and Livaudais, it appears, that in both of them the public road or Levee street is laid off some distance from the edge of the bank of the river or the existing levee, and on each side of it a range of lots is laid out; those on the side next to the river running across the levee to low water wark, measuring in some instances more than two hundred feet. On many of those lots, the buildings instead of being erected on the street, are on the end next to the bank of the river, close to the water's edge, having a levee or embankment of an irregular height and base to protect them. Not one of the plaintiffs have left more than thirty-five feet between their houses and high water, and some of them only fifteen feet and a few inches, others eighteen, twenty and twenty-five feet. Each one seems to have built very much at his own will, both before and since the incorporation of the city. The old levee has been cut down and destroyed, that buildings might be erected on its site, and every house now sought to be demolished, is in the whole or in part on the former levee, or entirely outside of it. The witnesses all testify to the inadequacy of the present protection from inundation. It is said, that the water has run over the embankment in various places, that steamboats in passing, throw it over, and that the banks are falling in at different places. Buisson, the surveyor, says, that the projected levee is on or very nearly on the site of the old one, and in some places nearer the river. That in a few places, the inside of the levee will be something more than sixty feet, in consequence of the irregular caving in of the bank.

About thirteen persons, owning about twenty lots, oppose the execution of this work, which all the other property owners appear to favor, and the question is, shall their will and interests prevail over that of the mass of the property

EASTERN DIS. owners in that quarter and the safety of the whole com-
May, 1841. munity?

HANSON ET AL. , In the course of the trial, the plaintiffs took a bill of ex-
vs.
CITY COUNCIL OF ception, to the opinion of the court overruling a question
LAFAYETTE. propounded to the witness Bach, asking his opinion "con-
cerning the existence, extent and sufficiency of the old levee
in comparison with the projected one." The defendants ob-
jected on the ground, that the " discretion of the President
and City Council of the city of Lafayette could not be in-
quired into by the courts." The court sustained the objection
on two grounds. First, that the question involved an inquiry
into the propriety, expediency and necessity of the projected
change in the levee, which the Judge considered to be a matter
within the discretion of the defendants, and that discretion
could not be revised by him. Secondly, that the only matter
for the court to consider, was the expropriation of the property,

The decision
of a jury of and whether the defendants had kept within the limits of their
twelve "inhabi-
tants" or land- charter in making the expropriation. We think, the Judge
holders, under
the act of 15th was right in rejecting the evidence, but not for either of the
February, 1808, reasons he gives for his opinion. The action of the plaintiffs,
respecting "the
police of the it appears to us, is an injunction to prevent a trespass and
shores of riv-
ers," directing disturbance of an alleged possession, by the officers of the Cor-
the construction
of a levee for the poration, under an ordinance regularly enacted, the expediency
protection of a of which is not denied ; its illegal and oppressive character as
Faubourg of
certain dimen- to the plaintiffs is only alleged; and as it appears, the Corpora-
sions, and fixing
its location, is tion proceeded to summon a jury, to decide on the expediency
conclusive on
the necessity and necessity of making the levee, under the act of 15th of
and propriety of February, 1808 ; 1 Moreau's Dig., p. 651 ; and that jury hav-
the measure, and
the city council ing decided in favor of it, we think their decision conclusive, as
have the power
to cause the exe- to the necessity, unless the nullity or illegality of their proceed-
cution of the
work. ings are put in issue, which has not been done.

The plaintiffs' second bill of exception, we think, cannot
be sustained, for the reasons stated in relation to the first ;
the object of the testimony offered being in effect the same.

The third bill of exception is more untenable, than either of
the others, as we cannot possibly see, what the amount of

monies received by the Harbor Master, or what has been expended by the defendants on the public road and levee, has to do with this controversy. It is irrelevant to the issues joined.

EASTERN DIS.
May, 1841.

HANSON ET AL.
*vs.*
CITY COUNCIL OF
LAFAYETTE.

As to the fourth bill of exception, we think, the Judge did not err in admitting Buisson's testimony, and the plan he presented. The object was, to show where the old levee was, and thereby show, that the plaintiffs were themselves trespassing on a place, the public had the use of, and of which the defendants were the administrators, and had the control. If on no other account, the evidence was admissible on the question of damages.

The use of the banks of navigable rivers is by law public, and on the Mississippi the levees are the banks; La. Code, arts. 446, 448. This is a servitude, established for the public or common utility, and all that relates to it, is regulated by particular laws; and every proprietor, adjacent to the shores of a navigable river, is bound to leave sufficient space for the making or repairing levees, roads and other public or common works. Idem, arts. 660 and 661. The principles here laid down, have been long well established, even if positive legislation had not sanctioned them.

*In a controversy about the location of a levee, parol evidence will be received to show where the old levee stood, and the new one is proposed to be; and also that the adverse party was trespassing on a public place, administered for the public use.*

*The use of the banks of navigable rivers, is a servitude for the public use, or common utility; and every proprietor adjacent to the shores of a navigable river is bound to leave sufficient space for levees, roads (streets) and other public or common works.*

The subject of roads and levees has repeatedly occupied the attention of the Legislature, and in relation to both, many positive regulations have been made of a general and local character. No subject is more important.

The act of February 15, 1808, Moreau's Dig., vol. 1st, p. 651, which forbids any one making new levees, without the authorisation of a jury of freeholders, and imposes penalties for constructing works which shall hinder or obstruct the free use of the shores of the Mississippi, seems not to have excited much of the attention of the District Judge or the Counsel. The act of the 18th of March, 1816, 2 Martin's Dig., 594, (which by some strange omission is not in Moreau's Digest at all,) and that of the 7th of February, 1829, session acts, p. 76, appears also to have escaped attention. These two laws, portions of

EASTERN DIS. *May*, 1841.

HANSON ET AL. *vs.* CITY COUNCIL OF LAFAYETTE.

the first of which are re-enacted in the latter, are full and specific in relation to levees. The base and height are ordained. The 3d section of both laws directs, how far the levee shall be from the water's edge. In some situations it must be an arpent at least, and in all cases at least sixty feet, measuring "from the summit of the bank." Section 5 says, that the earth used in the construction or repair of a levee, shall be taken at least twenty feet from the base, on the side of the river. Every proprietor of land fronting on the river, is bound, at certain seasons to keep a certain number of slaves to work upon the levee and keep it in repair. By the act of the 30th of January, 1834, sec. 4, the police jury of the Parish of Jefferson, independent of the general legislation on the subject, had special powers delegated to them in relation to the proportion, direction, making and repairing of levees, dykes, &c., and among them expressly the power of pulling down and removing all buildings and other incumbrances, that may obstruct the levee or space between the levee and river.

The charter of the city of Lafayette confers on them the entire control of the streets, levees, wharves, &c., subject to the restriction, that they shall not pass any ordinance, which shall interfere with the rights of the public to the levee, bank of the river or batture. Acts of 1833, p. 146, sec. 10. The 12th section of the same act confers on the Corporation all the powers, granted to the Mayor and City Council of New Orleans, by the "act concerning levees," passed March 16th, 1830: Acts of 1830, p. 114. The powers granted by this act are very great, and authorise the demolition and removal of obstructions, at the expense of those who have erected them. By the act of March 12, 1836, session acts, p. 131, sec. 1, the City Council are specially subrogated to all the powers of the police jury of the Parish of Jefferson, within the limits of the city, and the 9th section of the same act again confers on them the power, to prevent the obstruction of the streets and levees. If further power was necessary, it is given by the article 857 of the La. Code, which authorises the destruction of any works built on

*The charter of the city of Lafayette, gives the city council the entire control of the streets, levees, wharves, &c.; confers on the corporation the same powers granted to the city of New Orleans over these objects; and it is subrogated to the powers of the police jury of the parish of Jefferson, within the limits of the city.*

the banks of rivers, at the expense of those who claim them, and the owner of those works cannot prevent their being destroyed under any pretext of prescription or possession, even if immemorial.

This court has heretofore had occasion to act upon this question in the case of the Trustees of Natchitoches vs. Coe, 3 Martin, N. S., 140; and directed the removal of a house that had been built on the bank of Red river, which interrupted the use of its banks, which are common to all men.

If there be one provision of law clearer than any other, it is, that no man has a right to take exclusive possession of the banks of a navigable river, and appropriate them to his own use, and particularly of the banks of the Mississippi. He has no right to extend levees at his will and pleasure, or erect buildings and works, that will obstruct the free use of the banks to all men, although the right of property is in him, as proprietor of the adjacent lands.

The acts of 1816 and 1829, before referred to, having fixed sixty feet as the minimum distance, at which a levee shall be placed from the summit of the bank, we cannot see in the proceedings of the City Council any of that arbitrary and oppressive spirit, so freely imputed to them. Although we do not hold them as a petty sovereignty, free from control, and making their discretion the law, yet we think, they are charged with important public interests, and they who complain of them, ought to present themselves as citizens, willing to comply with the laws, and showing a proper regard for the rights of their fellow-citizens.

The plaintiffs strongly insist upon a compensation in damages in the event of their buildings being destroyed and the ground taken to make a levee, and say, they have been led into error by the ordinance of the City Council of the 18th June, 1833, reserving only forty feet for a landing and tow-path, and the proceedings of the police jury of the Parish of Jefferson. We think the character of that ordinance is not properly understood. The Council say nothing about the construction of a

levee, and although all was not reserved, to which they were entitled, it does not follow, that their rights were abandoned. But even if they had fixed forty feet as the space to be left, the plaintiffs have not respected the ordinance ; the evidence showing, that not one of them has left that space ; several of them are within twenty feet of the summit of the bank. The plaintiffs appear to have built their houses on the levee or outside of it ; by doing so, they became themselves violators of law and of public rights, and must take the consequences of their own acts. The laws prohibiting the erection of buildings and works on the banks of navigable rivers, have been long enacted, and were in force before the plaintiffs made their establishments and purchases. We therefore think, they are not entitled to damages; and if they were, it would not be just the Corporation of Lafayette should pay the full amount of them, as the space sought to be opened, and the levee to be constructed, is for the public benefit, and not exclusively for that of the inhabitants of that city.

The District Judge has, in our opinion, mistaken the character of this action ; it is not possessory, exclusively. Whilst we concur in many of the principles he has stated, and the reasons given, we cannot concur in the conclusion drawn from them. The judge thinks, because he could not allow the defendants all they claim, that therefore he could not allow them any thing. We do not consider ourselves so closely restricted.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and this court proceeding to give such judgment, as in its opinion ought to have been given by the court below ; do further order and decree, that the injunction issued herein, be dissolved, and the plaintiffs' action dismissed ; they paying the costs of this appeal, and those in the District Court.