### MALLARD v. STATE et al.

No. 5996.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

Writ of Certiorari and Review Denied
March 4, 1940.

N. S. Hoffpauir, of Crowley, and E. R. Stoker, David M. Ellison, and Bert E. Durrett, all of Baton Rouge, for appellants.

Hillyer S. Parker, of Monroe, for appellee.

TALIAFERRO, Judge.

The State and the Louisiana Highway Commission are impleaded as defendants herein under the authority conferred by Act No. 287 of the Legislature of 1938.

Plaintiff's truck and trailer, heavily loaded with logs, on November 8, 1935, collided with a truck of the Highway Commission, operated by its employee, J. A. Wright, on the Jonesboro highway, near Eros, in the Parish of Jackson. He was seriously injured in the collision and sues to recover a large amount of damages on account of such injuries, the pain and suffering incident thereto, and for physician's and hospital

expenses incurred in treating him. He charges that Wright's negligence alone caused the collision. The specific acts of carelessness and negligence accredited to Wright will be hereinafter set out.

Defendants, through different counsel, made separate appearances. Each filed exception of no cause and of no right of action. These were overruled.

The answer of the State, through the Attorney-General, denies the essential allegations of the petition, coupling therewith the following special defenses, viz.:

1. That Wright was not an agent, servant, or employee of the State when this accident occurred.

2. That should it be held that under the provisions of said Act No. 287 of 1938 the State is liable in damages to plaintiff, in such event it is specially pleaded that said act is null, void and unconstitutional for the reason that plaintiff "had not a cause of action for damages against the State of Louisiana at any time within one year following the date of said accident."

3. Alternatively, that plaintiff's own negligence contributed to the accident as a proximate cause thereof, in that he did not at the time have his own truck under such control as to enable him to stop it before the collision occurred.

The answer of the Highway Commission is in effect practically the same as that of the State, with like special defenses, however, while assailing the constitutionality of said Act, no specific grounds therefor are set forth. This defendant additionally pleads that the alleged claim of plaintiff against it was not paid for these reasons, to-wit:

(a) That this defendant is not liable for such payment, and

(b) Alternatively, that all funds in its hands, due or accruing to it, are solely dedicated by Par. (c), sec. 22 of Art. VI of the Constitution of the State "to the maintenance and construction of roads and bridges, and no part thereof may be legally used for the payment of plaintiff's claim."

Inferentially, the lower court overruled the attack on the constitutionality of Act No. 287 of 1938. Judgment for $16,117.50 against defendants insolido was rendered. They have appealed.

In this Court, attorney for the Highway Commission only argued the case. Written briefs filed disclose that the attorneys who prepared same, designate themselves as "attorneys for the Louisiana Highway Commission." However, we do not understand that the State has acquiesced in the judgment appealed from, nor that its appeal has been abandoned. We shall consider and dispose of the case, so far as concerns the State's interest, in the same manner as we do the Commission's, giving to it the benefit of the defenses urged in its answer and also of the briefs filed and argument had by attorneys for the Commission.

The Legislature, by Act No. 287 of 1938, authorized plaintiff to institute suit against the State "through the Louisiana Highway Commission * * * upon his claim for damage resulting from accident and personal injuries alleged to have occurred on November 8, 1935, by the negligence of persons in the employment of the Louisiana Highway Commission." Sec. 2 of the Act designates the venues wherein the suit could be brought and provides that citation be served on the Chairman of the Commission. Sec. 3 authorizes the Chairman of the Commission to compromise said claim. Secs. 4 and 5 of the Act read as follows:

"That the defendant in the suit herein authorized shall not be entitled to plead prescription barring said claim; provided, any suit entered under authority herein granted shall be filed not later than the 1st day of January, 1939. * * *

"That if the judgment rendered in said suit be against the State, or be compromised by the Louisiana Highway Commission it shall be paid by the Louisiana Highway Commission out of any funds belonging to said Commission which may be legally used for the payment of said judgment."

In brief, defendants attack the act in question as being unconstitutional on these grounds:

"1. A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts. R.C.C. Art. 8.

"2. The Act deprives defendant of a vested right, i. e., the plea of prescription in contravention of Article IV, Section 15 of the Constitution of Louisiana.

"3. The Act seeks to deprive the Louisiana Highway Commission of funds dedicated to the construction of roads and bridges in contravention of Article VI, Section 4 [§ 22 (c)] of the Constitution of Louisiana.

"4. The Act is a special law pertaining to a civil action in contravention of Article

IV, Section 4 [§ 22 (c)] of the Constitution of Louisiana."

■ Excepting number two, none of these charges against the Act's constitutionality is alleged in the Commission's answer. The State, while averring that the Act is unconstitutional, sets up no specific ground thereof. Under the well settled jurisprudence of the State, we would be warranted in ignoring all points of attack save number two in defendants' brief. However, all things considered, we have decided to pass on all four of the grounds of attack.

■■ We are unable to perceive any force whatever in proposition number one. It is a universal rule of law that the sovereign and also its governmental agencies in the performance of governmental functions, may not be sued in tort by its own citizens in its own courts without the State's consent or authority being first yielded. In this State such consent can only be given by the Legislature.

Sec. 35 of Art. III of the Constitution, concerning this question, provides: "Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein."

This organic permit is the authority for said Act 287. This Act simply permits plaintiff, a citizen of the State, to sue the sovereign on an alleged claim for damages against it, a right and a privilege withheld from him prior thereto. It does not impair the obligation of any contractual relation whatever, and operates retrospectively only to the extent that the alleged pre-existing damage claim may be sued upon. Of course, no such remedial legislation would be passed before such a claim arose. This could only be done by and through a statute having general application. Such a statute, if constitutional, would expose the State to much harassing and, ofttimes groundless, litigation. Hence, none has been enacted.

It is argued that this Act purports to have retroactive effect because it denies to the State the right to plead prescription against the claim in question, alleged to have already accrued. This contention will be fully discussed as we proceed with this opinion.

■ Likewise, we do not think there is merit in attack number two, which is that the Act attempts to divest the State of a vested right in that it inhibits it from pleading the prescription of one year, established by Arts. 2315 and 3536 of the Civil Code. We think this provision purely surplusage.

■■ Prescriptions, liberandi causa, are established to bar the right of a person to invoke judicial aid to enforce obligations, generally of a monetary character. They do not, nor are they intended to, destroy the obligation or the debt which arose on the happening of an event. The right only to enforce same is thereby affected. There is wide difference between the arising of a claim or money demand against a person and the accrual of a right of action to enforce it. If there exists no legal impediment to such enforcement, then, unless otherwise fixed by law, prescription begins to run simultaneously with the arising of the claim or money demand; but, if the claimant has no legal remedy whereby the claim or demand may be enforced judicially, surely the claim or demand may not be destroyed by prescription or his inaction before a remedy is accorded him. May v. State et al., 133 Ind. 567, 33 N.E. 352.

■ The limitation of time on the right to sue, fixed by the above mentioned codal articles, applies only to those cases wherein the cause or right of action arose simultaneously with the happening of the event, the basis of the cause of action, or thereafter, at which time there was no legal impediment against seeking judicial recovery.

Reason does not support the contention that, notwithstanding the total lack of right on the part of an individual to judicially enforce payment of that which is due him, on account of lack of legislative authority to do so, the debt or obligation prescribed, ceases to exist; because, for said reason, it may not be timely asserted. To so hold appears to us to be absurd.

■ The right to sue to recover what may be due by one person to another is not an inherent one. It is a creature of law. "The privilege of suing and of judicially compelling a debtor to repay what he is due to a complainant, even by the forced sale of his property, is conferred only by law. Without legal sanction such could not be done." State v. Louisiana Oil Refining Corporation, La.App., 176 So. 686, 688, 691.

■ Therefore, it seems clear that until a remedy is provided for the exercise of an asserted right against the State, the statute of limitation, peculiar to such right otherwise applicable, is suspended. If this were not true, in most cases of the kind, it would be an idle gesture for the Legisla-

ture to authorize suit against the State. When such authority is granted, except in so far as may not be negatived by the plain terms of the grant, the rules of law and procedure applicable to suits between individuals, involving a like or similar cause of action, applies. The Legislature has the unlimited power, in granting the remedy, to "provide a method of procedure and the effect of the judgment which may be rendered" in any suit thereunder.

That the Legislature, many of whom were lawyers, fully recognized that plaintiff's alleged claim had not been barred by prescription, is clearly reflected from the provision in the Act that suit thereunder must be filed not later than January 1, 1939, some five months after the Act became effective.

The prescriptions established by Arts. 2315 and 3536 of the Civil Code, as is true of nearly all others, are but the arbitrary fixing of the law making power. The limitations therein may be increased or decreased by the same authority that created them. And, in the present case, the law maker elected to provide a lesser time in which plaintiff could assert his claim against the State.

The third point of attack against the Act's constitutionality is not well taken. The Act does not seek to deprive the Commission of any funds dedicated to the construction and maintenance of roads and bridges. Such a stipulation would clearly be ineffective. The Act does say that if judgment is rendered for plaintiff it shall be paid by the Commission out of "any funds belonging to said Commission, which may be legally used for payment of said judgment."

The question here presented was thoroughly discussed by the Court in State ex rel. Varnado v. Louisiana Highway Commission, 177 La. 1, 147 So. 361, 362. In that case plaintiff proceeded under Act No. 25 of 1930, which, for the greater part, is virtually identical with the Act involved herein. The one big difference lies in the nature of the Legislative mandate as regards the payment of the judgment, if plaintiff should recover. The 1930 Act simply provided that *such judgment shall be satisfied and paid by the Louisiana Highway Commission.* The constitutionality of the Act was challenged on account of this provision, it being argued that all funds of the Highway Commission were dedicated by law to the construction and maintenance of highways and bridges of the State. The attack did not succeed. In the course of its opinion, the Court, elaborating upon the question of constitutionality, said:

"If it is intended by section 2 of Act No. 25 of 1930 that the judgment obtained by relator under this act shall be satisfied and paid by the highway commission out of any fund dedicated, by section 22 of article 6 of the present Constitution, to the construction and maintenance of the system of state highways and bridges, it is obvious, from the above prohibitory provisions of the organic law, that section 2 of Act No. 25 of 1930 would be unconstitutional, in so far as the provision for the payment, and satisfaction in that manner, of relator's judgment is concerned.

"Since section 2 of Act No. 25 of 1930 makes *no provision whatever as to the funds out of which relator's judgment shall be* paid and satisfied, and as the Legislature has authority 'to pass to the general highway fund any moneys derived from any other source' than from any state or license tax to be collected under section 22 of article 6 of the Constitution of 1921, or imposed thereunder by the Legislature, *it is clear that funds derived from any other source and allocated to the general highway fund by the Legislature may be properly utilized by the highway commission for the payment and satisfaction of relator's judgment."*

But the Court sustained an exception of no cause and no right of action, and remanded the case on the ground that it was not specifically alleged in the petition that there were funds in the Commission's hands, outside of those dedicated by the Constitution to specific objects, which could be used to pay the judgment sought to be recovered.

The petition in the present case does not contain allegations of the purport of those absent from the petition in the Varnado case, which rendered it vulnerable to the exception. This fact is urged in support of the same sort of exception filed in this case.

We think the plain terms of the mandate expressed in Sec. 5 of the Act in question, above quoted, render inapplicable what the Court said in sustaining the exception in the Varnado case. The Commission is ordered to pay any judgment rendered for plaintiff from any funds in its hands legally applicable thereto, and this, too, *without reference to time.* If this were not true, it can easily be seen that a suit of this character would, in nearly every instance, be barren of substantial results, regardless of the merits of the claim sued on. Avail-

able funds could be in the Commission's hands at time of passage of the Act, or when suit was filed, and if expended before judgment became final, plaintiff would be out of luck because funds of like character, reaching the Commission thereafter, would not be subject to the judgment's payment. Such a construction of the Act does violence to its obvious spirit.

In the Act under consideration, the Legislature, speaking for the State, declares in no uncertain tone its willingness to pay plaintiff any amount which its own courts find to be due him. Its own agent, the Highway Commission, is commanded to make such payment out of funds legally applicable, which, after all, can be done only from funds which the State, through its Legislature, may allocate to the Commission, funds derived from taxation. The State has the unquestioned right to say to its agent, the Commission, that it shall pay certain debts and obligations, recognized to be morally and legally due, from undedicated funds passed to the Commission's credit.

█ The fourth point of attack against the Act's constitutionality is not briefed. It is wholly without merit.

It is not now contended that Wright, the operator of the Commission's truck, was not its employee at the time of the accident. The testimony establishes such relationship, and that he was performing the duties of his employment at the time.

█ It is equally well established that the accident was caused solely by Wright's carelessness and negligence. He parked his truck on his right hand side of the highway, partly on the shoulder, nearly midway between two hills in the road, approximately 500 feet apart. Plaintiff's truck and trailer, heavily loaded with logs, was traveling in the same direction. As he reached the top of the hill behind Wright's truck, going very slowly, he observed the truck parked approximately 300 feet ahead. The road between them was a 5% down grade. Plaintiff allowed his truck to increase its momentum in the hope that he would be able to take the next hill beyond. When about 150 feet from the Wright truck, going at the speed of 20 miles per hour, he noticed that it had begun a left turn across the highway. No notice or signal of such movement had been given. Plaintiff immediately began sounding his horn and to holloe at Wright, in the hope of stopping his forward movement, but without avail. He also applied the brakes, and, acting upon the spur of the moment, endeavored to pass in front of Wright's truck. The collision resulted. He faced an emergic situation, not of his creation, and acted as his judgment then directed him. He was wholly unable to stop his truck, loaded as it was, in the distance he was from the other truck after becoming aware of its intention to turn in front of him. He was traveling at a very reasonable rate of speed. No blame whatever is chargeable to him as a factor contributing to the accident.

█ Plaintiff's truck, after the collision, went into the ditch on his right side of the highway. He was thrown to the ground where he remained for over an hour with heavy logs upon his body. Several men there at the time were unable to extricate him earlier from the logs. He was immediately carried to the Riverside Sanitarium in the City of Monroe, and placed in charge of Dr. A. D. Tisdale, owner and proprietor thereof, for treatment. He was a helpless patient there until June 3, 1936, a period of 208 days. After leaving the sanitarium, he was forced to remain in bed at the home of a relative for an additional 9 months. At the time of the trial, he was still unable to go about without the aid of crutches. It is certain he is a cripple for life, a physical wreck, and will never again be able to perform manual labor, such as he followed exclusively for a living prior to the accident.

The weight of the logs fell principally upon the pelvic region. There were fractures of the ischium and ilium, with separation of the pubic symphysis. The muscles, tissues and blood vessels of the pelvic region were badly ruptured, torn and bruised. The bladder was also ruptured. There were bruises and wounds practically over the entire body. He developed pneumonia and was unconscious therefrom for ten days. Abscesses of a serious nature developed in the right hip, through which many particles of bone passed. Naturally, these conditions superinduced high temperature. Dr. Tisdale testified that plaintiff was in a dying condition for the entire period of his confinement in the sanitarium. In his long experience as a physician and surgeon, he has not seen any person suffer as much as has plaintiff.

The seriousness of plaintiff's injuries and the intensity of his pain and suffering may be fairly well appraised from his long stay in the sanitarium and from the fact that Dr. Tisdale, personally, spent at least 1,000 hours in treating him. He has suffered to

a greater or less degree from the time he was injured until the day of trial. Dr. Tisdale's opinion is that he will possibly suffer pain the remainder of his life.

When plaintiff was injured he was thirty-one (31) years old, was healthy and robust. He weighed 180 pounds. He now weighs 140 pounds. He earned $100 per month from logging.

The lower court awarded the sum of $12,-500 for shock, pain, suffering, loss of earning power and for permanent disability. Defendants complain that this amount is excessive. We do not think so.

Plaintiff, in brief only, asks that this amount be increased to $20,000. As no answer to the appeal, praying for such increase, has been filed, we are without right to alter the judgment in plaintiff's favor.

The lower court also allowed recovery for:—

| | |
|---|---|
| Physician's bill ................ | $1,000.00 |
| Nurses' bills ................... | 1,548.00 |
| Hospitalization ............... | 1,069.50 |
| Total ........................ | $3,617.50 |

The correctness of these amounts has been clearly established.

For the reasons herein assigned, the judgment appealed from is found to be correct and is hereby affirmed with costs.