FOURNET, Justice.
 

 The plaintiff Mrs. Lena Marquette De Blanc, who acquired three tracts of land located in Township 22 South, Range 20 East, of the Southeastern Land District of Louisiana east of the 'Mississippi river, comprizing some 653 acres, from her co-plaintiff, Steve D’Asaro, is seeking to be recognized as the owner of the property, and, since it was allegedly included by the state of Louisiana in two of its oil and gas leases, both are endeavoring to recover their pro rata share of the rentals, royalties, bonuses, and other profits received by the state from its lessee. In the alternative they are asking that the leases, now-being exploited by The Texas Company, be cancelled in so far as they affect this property and that they recover “damages to their property rights.” This appeal has been taken from a judgment dismissing their suit on exceptions of no cause and no right of action filed by the state.
 

 In the original petition it is alleged that the State of Louisiana, in June of 1928, through its then commissioner of conservation, leased “All swamps and marsh lands in Township 22 South, Range 20 East, Southeastern District of Louisiana, East of the Mississippi River,” with certain exceptions, to William A. Walsingham, and, in September of the same year, through its then governor, leased the same lands (consisting of approximately 60,000 acres) to Carroll S. Mayer; that because the plaintiffs’ three tracts of land ' (purchased by the plaintiff Steve D’Asaro from the Succession of Robert M. White at a public sale in 1933 and sold by him on June 24, 1936, to Mrs. De Blanc), all located in Township 22, were not included in the land excepted from the operation of the state’s leases affecting the land in this township, it was necessarily included in the said leases, entitling- the plaintiffs to participate in the rentals, royalties, bonuses, and other profits received by the state from The Texas Company — the present assignee of the leases under agreements entered into in 1929 by all interested parties — in the proportion that this acreage bears to the total acreage leased by the state, although none of the producing wells
 
 *977
 
 are located on the land in controversy. D’Asaro is seeking a judgment in his favor for the proportionate amount of the rentals, bonuses, and royalties received by the state up until his sale of the property to Mrs. De Blanc in 1936, while Mrs. De Blanc, in addition to seeking recognition as the owner of the property in question, is asking for a judgment for the proportionate amount of these profits received by the state from the date of her purchase from D’Asaro.
 

 The plaintiffs supplemented and amended their original petition when it was excepted to by the state on the ground that it disclosed neither a right nor a cause of action by further averring that the state of Louisiana is in possession of the property, whereupon the state pleaded the unconstitutionality of Act No. 158 of 1940, under which the plaintiffs were authorized to sue the state, because of the failure to provide in the act a method of procedure and the effect of any judgment that might be rendered in the suit, in contravention of Section 35 of Article III of the Constitution of 1921.
 

 The plaintiffs then filed another supplemental and amended petition reiterating and amplifying the allegations and de- • mands made in their original and first supplemental petitions, ratifying the state’s leases as now held by The Texas Company, and praying for the relief as set out in the first paragraph.
 

 The trial judge, being of the opinion that Act No. 158 of 1940, authorizing the institution of this suit against the state, was unconstitutional, maintained the state’s exceptions of no cause and no right of action and dismissed the suit of the plaintiffs at their cost. This appeal followed.
 

 Under the holding of this court in the case of Lewis v. State, 196 La. 814, 200 So. 265, the legislature’s failure to provide the method of procedure and the effect of the judgment that might be rendered in this suit in Act No. 158 of 1940 authorizing its institution, as specifically required by Section 35 of Article III of the Constitution of 1921, renders the statute null and without effect, and the case of Mallard v. State, 194 So. 447, decided by the Court of Appeal for the Second Circuit, relied on by counsel for the plaintiffs, has no application on this point for the reason that the question here presented was neither urged nor passed on by the court in the Mallard case. ,
 

 But counsel for plaintiffs argue that since the provisions of the constitutions of this state and the United States guaranteeing the protection of property rights are self-executory, requiring no legislative enactment for their enforcement, the authorization granted the plaintiffs for the institution of this suit in Act No. 158 of 1940 was unnecessary, citing in support thereof the cases of De Moss v. Police Jury of Bossier Parish, 167 La. 83, 118 So. 700, 68 A.L.R. 336; Murff v. Louisiana Highway Commission, 19 La.App. 847, 140 So. 863; Cope v. Louisiana State Live Stock Sanitary Board, La.App., 176 So. 657; and Pelt v. Louisiana State Live Stock Sanitary Board, La.App., 178 So. 644.
 

 A mere reading of these cases will show that while they follow the constitu
 
 *979
 
 tional mandate that private property can only be taken or damaged for public purposes after juát and adequate compensation •has been paid, they have no application in the instant case for here the plaintiffs’ property was neither appropriated nor damaged for public purposes within the meaning and contemplation of this fundamental canon of law.
 

 In the De Moss case the plaintiff recovered damages inflicted on his crop by cattle when workers, in widening one of the state’s public roads, tore down the fence protecting the fields, the court being of the opinion that the damage to the crops was the proximate result of this widening of the road, and, consequently, constituted a taking of private property for a public purpose.
 

 In the Murff case the court held that a petition alleging the Louisiana Highway Commission in paving a road for public purposes obstructed the natural drains in the vicinity of plaintiff’s property, causing an overflow and destruction of his crops, stated a right and a cause of action against the commission.
 

 In the two live stock cases the courts held that the plaintiff was entitled to sue the state without special legislative authorization to recover for live stock killed during dippings for the eradication of ticks under' the state’s live stock regulations, since the dipping was for the benefit of the public and the destruction of the live stock during this procedure equivalent to a taking or damaging of private property for public purposes.
 

 While the plaintiffs did allege in their petitions that the state commissioner of conservation and the governor leased
 
 all
 
 of
 
 the swamp
 
 and
 
 marsh lands
 
 in Township 22 South, Range 20 East, of the Southeastern District of Louisiana, east of the Mississippi river for oil and mineral purposes, which, since it did not exclude the land owned by them in that township (fractional Section 17 and 18 and the NW % and the SW% and SWy4 of the SW^ of Section 23), necessarily included it and constituted a taking of their property without adequate compensation within the meaning and contemplation of the constitutional requirements, they also alleged that the property leased by the state was acquired by the conservation commission under the provisions of Act No. 52 of 1921, Ex.Sess., which act specifically withholds and withdraws from entry or sale and places under the control of the Department of Conservation “all of the vacant and unappropriated public lands
 
 belonging to the State of Louisiana,
 
 now existing or hereafter acquired by accretion or otherwise, and more particularly described as follows:
 
 All swamps
 
 and
 
 marsh lands
 
 in Township
 
 22
 
 South, Range 20 East, Southeastern District of Louisiana, East of the Mississippi River, excepting the following lands: S. E.14 of S. E.1/4 of Section 11; N.y2 of S.
 
 E.y4
 
 of Section 12; S.% of N.
 
 W.y4,
 
 n.
 
 e.y4
 
 of s.
 
 w,y4,
 
 n.
 
 w.y4
 
 of s.
 
 e.y4
 
 of Section 15, S.
 
 E.y4
 
 of S.
 
 E.y4
 
 'of Section 15; and Sections 22, 25 and 26. * * *” (Italics ours.) When all of the interested parties by agreement conveyed these leases to The Texas Company, the assignment was made under this same description. It
 
 *981
 
 is obvious, therefore, that the conclusion of the plaintiffs that their land was included in these leases is not well founded, for the state in its leases not only limited the property affected thereby to' the swamp and marsh lands belonging to it, but the plaintiffs, in describing the ' property claimed by them, have failed to allege and show that it falls into the category of swamp and marsh lands, the type of land affected by the leases. It is also obvious that their allegation that the state is in possession of the property is but another unfounded conclusion of the pleaders, for it is based on the allegation that the property is included in the leases. From the allegations of the petitions there is nothing to show that the state has actually leased the property in question or is in possession thereof.
 

 It is our opinion, therefore, that .the plaintiffs have failed to state a cause of action and that the judgment dismissing their suit must be affirmed.
 

 For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.
 

 O’NIELL, C. J., absent