CULPEPPER, Judge.
Plaintiff landowner, Edward W. Ortego, instituted this suit against the defendant, State of Louisiana, through the Department of Highways, to obtain payment for land taken for highway purposes and consequential damages occasioned by the said taking. All issues other than those relating to quan- *433 turn are identical to the ones raised in Peart v. State of Louisiana, through the Department of Highways, La.App., 125 So. 2d 673. For the reasons therein assigned, we are of the opinion that the trial judge’s decision on those issues other than quantum is correct.
The judgment of the lower court awarded Mr. Ortego the following:
1) For the land actually taken for the highway right of way (3.602 acres @ $400 per acre) $1440.80
2)For diminution in value of the land remaining on the east side of the highway (4.5 acres @ $300 per acre) $1350.00
Total_$2790.80
On appeal the defendant appellant does not complain of the amount of the award. However, plaintiff has answered the appeal and asks for an increase as follows:
1) Property taken in highway right of way (3.602 acres @ $475 per acre) , Total-$1710.95
2) Diminution in value of land remaining on east side of highway (4.5 acres @ $375 per acre) Total-$1687.00
3) Damages to provide proper drainage to residential property-$1400.00
4) Diminution in value to residential premises-$3730.00
5) Damages to restore water facilities, cattle, seed and equipment barns-$2866.00
Total-$11,393.00
As regards the value of the land actually taken for the right of way, the four experts varied from a low of $300 per acre to a high of $500 per acre, but the average was approximately the sum of $400 per acre which was found by the trial court to be the market value of this property at the time it was taken in 1946. The same experts who appeared as witnesses in this case also testified in the case of Peart v. State, supra, giving the same appraisals as to the same type of land. In the Peart case we have already concluded the trial court was correct in finding a value of $400 per acre for the land taken.
There is very little dispute amongst the expert appraisers that the land remaining between the east side of the highway and the toe of the levee was diminished in value by reason of the taking to $100 per acre. Having concluded that the value before the taking was $400 and that the value of the land after the taking was $100, the net loss per acre in consequential damages due to the taking was $300 per acre or a total of $1,350 for the 4.5 acres left east of the highway.
The third item claimed by plaintiff is damages to’ provide proper drainage to the residential property. The record discloses that before 1946 plaintiff’s house faced east toward the old highway which ran along the levee of Red River. Shortly before 1946, the levee had to be moved so as to take in the old highway and as a consequence the new highway had to be located to the rear of plaintiff’s residence. Of course, the natural drainage is away from the levee toward the new highway and it is the contention of the plaintiff that the new highway, being built approximately 3 *434 feet higher than the natural level of ground, obstructed his drainage. The trial court found, and we think correctly, that the record does not show the Highway Department neglected to place sufficient culverts under the new highway to permit the natural drainage of plaintiff’s property. The trial judge found that when plaintiff rearranged his brick residence so as to reverse the back and the front thereof, his new front yard was located in what had previously been a low area used as the barnyard which necessitated considerable filling with dirt. Furthermore, the lower court found, and we think correctly, that the record is deficient as to the quantum, if any, of damages caused by such alleged interference with natural drainage. In his well considered written opinion the trial judge carefully analyzed the evidence on this issue and held as follows:
“As has been noted, the claim here is for reimbursement of money spent to remedy drainage conditions which Mr. Ortego contends have resulted because of the highway construction. The evidence makes it very plain that at least some of the dirt fill-in was required because plaintiff was converting a low barn-yard with depressions and holes into a beautified front yard. Unquestionably, some of this fill would have been required irrespective of drainage conditions. Further, according to Mr. Roundtree, the building of the highway had nothing to do with plaintiff’s drainage problem, and the testimony of Mr. Holland is quite convincing that this problem was due only to “some extent” by reason of the new highway having been built. Additionally, included in the $1400 sought by plaintiff is the undisclosed cost of a concrete driveway from the highway to his garage, an item which in the opinion of this Court cannot possibly be held an obligation of the defendant. Accordingly, plaintiff cannot be awarded judgment on the claim we have been discussing.”
 The next item of damages claimed is diminution in value to residential premises in the sum of $3,730 due to the fact that the front of plaintiff’s house became its rear. The jurisprudence of this state is well settled that although consequential damages for discomfort, inconvenience or loss of esthetic values are not per se compensable, they may be a factor in determining whether there has been a diminution in the market value of the property which remains after the taking. See City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 and the cases cited therein. The expert realtor, Mr. W. C. Webb, testified that in his opinion the plaintiff’s brick residence was worth $14,000 before the taking in 1946, and that after the highway was relocated to the rear of plaintiff’s residence it was diminished in value by one-third or the sum of $4,666.66. Plaintiff’s expert realtor, Mr. T. O. Wells, estimated that as a result of relocation of the highway, plaintiff’s residence was diminished in value by one-half. However, plaintiff only claims for this item of damages the sum of $3,730, to which amount he is entitled.
 The last item of damages claimed is to “restore water facilities, cattle, feed and equipment barns.” The evidence shows that plaintiff’s farm consisted of 150 acres which he used principally for raising cattle. When the new highway was built, plaintiff’s three barns and his watering facilities were left on the 4.5 acres east of the highway, thereby separating them from his pasture on the west. The evidence shows that the barns and the watering facilities were thereby rendered practically useless for plaintiff’s farming and cattle raising operations. When plaintiff learned of the proposed new highway he tore the existing barns down and built “a large barn and some sheds” on what finally became the west side of the relocated highway. In addition he ran 600 feet of pipe from his well to the new barns. What plaintiff is now seeking is the actual replacement value, less depreciation, of the three barns *435 which he tore down in 1946. Considerable testimony was introduced into the record to show the actual cost on a footage basis of constructing three such barns as were demolished. The record contains no evidence as to the cost of moving the three existing barns nor does it contain any evidence as to the amount of diminution in value of this cattle farm by reason of the new highway separating the barns from the pasture. In our opinion the trial judge correctly held that plaintiff had failed in his burden of proving the quantum of this item of damages. Apparently it is the position of the plaintiff that the barns and watering facilities left on the east side of the highway were rendered useless to plaintiff’s farming and cattle raising operations and that he is therefore entitled to the replacement value thereof the same as if these barns and watering facilities had been actually taken by the right of way. This argument is without merit. The jurisprudence of this state is well settled that although the replacement cost of improvements may have evidential value in determining the amount of diminution in market value of the land and improvements before and after the-taking, the landowner is not entitled to the replacement cost per se of improvements whether they are actually taken by the right of way or left on the land remaining. See Mississippi River Bridge Authority v. Curry, 232 La. 140, 94 So.2d 9; State v. Chadick, 226 La. 367, 76 So.2d 398, and the cases cited therein.
With reference to the watering facilities, it is our opinion that the trial judge was correct in finding that the record actually does not even show the cost of laying the 600 feet of pipe from the well on the east side of the highway to the new barns on the west side thereof nor does the record show the amount of reduction in market value of the farm caused by the well being separated from the barns and pasture. This item was properly disallowed.
For the reasons hereinabove set forth, it is our opinion that the judgment appealed from should be amended so as to award plaintiff the following:
1) Property actually taken for highway right of way (3.602 acres @ $400 per acre) $1440.80
2) Diminution in value of land remaining on east side of highway (4.5 acres @ $300 per acre) $1350.00
3) Diminution in value to residential premises $3730.00
Total-$6520.80
Otherwise than as herein amended the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.