70 So.2d 102

HEBERT et ux.

v.

T. L. JAMES & CO., Inc. et al.

No. 41334.

Dec. 14, 1953.

Rehearing Denied Jan. 11, 1954.

Elton A. Darsey, Houma, for plaintiffs-appellees.

W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Louis S. Quinn, Joseph A. Loret, ·Baton Rouge, for intervenor-appellant-respondent.

HAMITER, Justice.

Plaintiffs herein, Nelo J. Hebert and his wife, Mrs. Daisy Picou Hebert, own, and they have possessed for some 26 years, a tract of land in the Parish of Terrebonne on which they maintain their home, it being situated about nine miles below the City of Houma and having a front of six arpents more or less on the left descending bank of Bayou Terrebonne, a navigable stream. Across the front of such tract, approximately parallel and close to the named stream, exists a graveled road, measuring some 30 feet in width, that has been in use since time immemorial. Presently this highway, a heavily traveled thoroughfare, is included in the State Highway system and is known as Route No. 69.

Under date of July 20, 1951 the Department of Highways of the State of Louisiana, through its right of way engineer, addressed letters to Mr. and Mrs. Hebert. (they denied having received the letters) informing them that it proposed to construct a concrete paved highway across their property and along State Route No. 69, this being a part of two projects that provided for 6.245 miles of concrete paving between the Towns of Bourg and Montegut. The letters also informed the addressees that a servitude 75 feet in width was required for the proposed paving and that "The Department of Highways will, in the exercise of the servitude provided for by Articles 665 and 707 of the Revised Civil Code of Louisiana, occupy the said servitude area over and across your said property and construct and maintain thereon a Public Highway as herein set forth."

A few days later, for the purpose of constructing this improvement, the Department entered into a contract with T. L. James & Company, Inc.

On December 18, 1951, T. L. James & Company, Inc., in carrying out the contract, commenced the widening of the then existing 30-foot road bed, using a road ma-

chine therefor and cutting away a portion of plaintiffs' front yard, its intention having been to create the contemplated right of way 75 feet wide on which would be constructed a 20-foot paved slab connecting with the continuous pavement into Houma.

Thereupon, plaintiffs demanded a cessation of the work. Also, they instituted proceedings against T. L. James & Company, Inc., and its superintendent in charge of the projects (L. E. Tadlock), praying for prohibitory and mandatory injunctive relief and for an award of damages allegedly sustained. The Department of Highways was not impleaded as a defendant; however, it entered the proceeding by way of a petition of intervention, joining T. L. James & Company, Inc., and L. E. Tadlock in opposing plaintiffs' demands.

The rule that was issued in connection with the application for preliminary writs of injunction was regularly tried and thereafter made absolute. The judgment thus rendered prohibited and restrained the defendants and intervenor from disturbing plaintiffs in the possession of their property (the described land, "subject to a right of way of approximately thirty (30) feet over the front portion of said property on which a public road has existed for many years"); also, the judgment decreed the issuance of a mandatory injunction "ordering the said defendants to remove from the property of plaintiffs the tree roots and other debris which were illegally dumped on plaintiffs' property and ordering them to replace the

earth taken from the yard of plaintiffs and to replace plaintiffs property to the same state in which it was before the disturbance by defendants."

From that judgment the Department of Highways appealed devolutively to this court. However, the appeal (docketed here as 40,710) was transferred to the Court of Appeal, First Circuit, 221 La. 1044, 61 So. 2d 734; and a decision thereon was rendered by that tribunal on March 19, 1953, it decreeing a reversal of the district court's judgment and a dissolution of the preliminary injunctions previously ordered, La. App., 64 So.2d 478. On plaintiffs' application we issued the writ of certiorari under date of July 3, 1953, it resulting in the instant consideration.

In the meantime the district court heard the cause on its merits and rendered a judgment perpetuating the writs of injunction and awarding damages to plaintiffs (as against the defendants) in the sum of $725. From that judgment intervenor and the defendants perfected appeals to this court. Those appeals were transferred to the Court of Appeal, First Circuit, 223 La. 424, 65 So.2d 899, Id., 223 La. 426, 65 So.2d 900, where they are now pending, the transfer having been ordered on June 1, 1953 or subsequent to that court's decision on the rule for the preliminary writs of injunction which is presently before us for review.

While conceding that the Department of Highways is entitled to and legally holds a 30-foot servitude across the front of their

property, because it and the Parish Police Jury have maintained the graveled road there for many years, plaintiffs contend that such Department can not widen the roadway to 75 feet as planned without compensating them for the additional land taken, this being guaranteed by Section 2 of Article 1 of the Louisiana Constitution.

Intervenor, on the other hand, insists that under the provisions of the Louisiana Civil Code, particularly Articles 665 and 707, lands which border navigable streams (such as plaintiffs' tract does) owe servitudes for general road purposes, without any compensation therefor to the landowner, and the servitudes so imposed are not limited to any specific widths.

LSA–Civil Code, Article 707 recites: "He who from his title as owner is bound to give a public road on the border of a river or stream, must furnish another without any compensation, if the first be destroyed or carried away.

"And if the road be so injured or inundated by the water, without being carried away, that it becomes impassable, the owner is obliged to give the public a passage on his lands, as near as possible to the public road, without recompense therefor." This article seems to contemplate the previous existence of a road, which a person from his title as owner was required to give, and contains no provision imposing or creating a servitude in the first instance.

LSA–Civil Code, Article 665 states: "Servitudes imposed for the public or com-

mon utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.

"All that relates to this kind of servitude is determined by laws or particular regulations." If an interpretation of this article were now a matter of first impression it might well be concluded that public servitudes of roads are not thereby created. It is contained among the general provisions respecting predial servitudes imposed by law, and it appears to merely illustrate the servitudes that are elsewhere established and regulated for the public or general utility. They, thus, are said to pertain to the space which is to be left: (1) for the public use by the adjacent proprietors on the shores of navigable rivers (as required by LSA–Civil Code, Article 455 in which no mention is made of roads); and (2) for the making and repairing of levees, roads and other public or common works (public works generally, not necessarily those situated on the shores of navigable rivers). And it is interesting to note, in this connection, that the provisions were derived from Code Napoleon, Article 650 (as translated in Louisiana Legal Archives, Vol. 3. Part 1, page 383), reading:

"Servitudes imposed for the public or common utility relate to the footpath along navigable or floatable rivers,

and the making or repairing of roads, and other public or common works.

"All that relates to this kind of service is determined by laws or particular regulations."

Nevertheless, in some of the earlier cases decided by this court, LSA–Civil Code Article 665 was interpreted as having created or imposed road servitudes, just as though it recited (which it did not and does not) that a space "is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works." See Hanson v. City Council of Lafayette, 18 La. 295, Pecot v. Police Jury, 41 La.Ann. 706, 6 So. 677, Ruch v. City of New Orleans, 43 La.Ann. 275, 9 So. 473, Peart v. Meeker, 45 La.Ann. 421, 12 So. 490, Pontchartrain Railroad Company v. Levee Commission, 49 La.Ann. 570, 21 So. 765 (in several of which cases the interpretation was dicta). And this construction has been accepted in more recent cases. Powell v. Porter, 172 La. 681, 135 So. 24, Dickson v. Board of Commissioners (involving only levees), 210 La. 121, 26 So.2d 474.

Initially, in so construing LSA–Civil Code, Article 665, the court evidently had in mind and was influenced by certain customs, foreign ordinances, and statutes on the subject. For example, from early times roads and levees were deemed to be due from riparian property without compensation, ordinances of France and Spain having

imposed the servitudes and some of the grants from those countries having contained reservations respecting them. See Renthorp v. Bourg, 4 Mart., O.S., 97. The French ordinance of 1669 stated: "Owners of estates, bordering on navigable rivers, ought to leave along the banks a space, at least twenty-four feet wide, for a royal road and towing path, * * *." The Spanish law declared that those who obtain concessions on the river shall be held to make a levee the first year and, further, "to make, and preserve in repair, the royal road, which must be at least thirty feet in width."

Again, in 1818 the Louisiana Legislature enacted a statute which recited in part:

"Sec. 1. * * * That all roads in this state that have been opened, laid out or appointed by virtue of any act of the legislature heretofore made, or by virtue of an order of any of the police juries in their respective parishes are hereby declared to be public roads, as are also all roads made on the front of their respective tracts of lands by individuals, when the said lands have their front on any of the rivers or bayous within this state; provided it may be lawful for any individual through whose land the police jury shall have caused a road to be laid out which should thereafter be considered as public as above stated, to claim a just compensation therefor, whenever he shall not have received the same.

"Sec. 2. * * *

"And all damages assessed by the said jury to any individual through whose land the said road may run, shall be deemed a parish charge, and paid by the treasurer of said parish on a warrant signed by the parish judge; provided, however, that nothing in this section shall be construed to give a right to any individual to claim damages for the laying out of a road along the front of his land, *according to the former customs existing in this state; * * *."* These provisions substantially as originally enacted, became a part of the Revised Statutes of 1870, Section 3368, and were also incorporated in the Revised Statutes of 1950, LSA-R.S. 48:491 and 493. (Italics ours.)

Too, in 1829 the Legislature enacted a statute, No. 31, entitled "An Act Relative to Roads and Levees". The first section thereof recited: " * * * That throughout all the portion of the State watered by the Mississippi and the bayous running to and from the same which are settled, where levees are necessary to confine the waters of that river, and to shelter the inhabitants against inundations, the said levees shall be made by the riparian proprietors in the proportions and at the time hereinafter prescribed." The next seven sections of the statute also dealt with the construction and maintenance of levees. Then Section 9 provided: "That every owner of lands situated on the banks of the river or bayous running to and from the same or other waters connected therewith throughout this State, shall be bound to give to the public, and to keep constantly in good repair, a high way at least twenty five feet wide, on the whole front of his property, * * *." This section does not appear to have been later amended, although there were amendments to other provisions of the statute, the last of which was in 1843. Neither was Section 9 carried into the Revised Statutes of 1870 or those of 1950.

But be that as it may, and irrespective of what influenced the mentioned interpretation of LSA–Civil Code Article 665, it is certain that the servitude so imposed by the codal articles on property bordering a navigable stream was not intended to serve the public for any purpose other than that which is incident to the nature, navigable character, or use of the stream.

In Lyons v. Hinckley, 1856, 12 La.Ann. 655, it was contended "on behalf of the plaintiff that inasmuch as the bayou Courtableau is a navigable stream and connected with the Mississippi river, that the plaintiff has a right to a road in front of the defendant's land lying upon the bayou, in virtue of the Act approved Feb. 7, 1829, relative to roads and levees, and Art. 446 and 661 [now Arts. 455 and 665] of the Civil Code. * * * " (Brackets ours) After quoting Article 446 (now 455, and which deals with the use of the banks of navigable rivers) the court said: "Never-

theless, the property of the river banks belongs to those who possess the adjacent lands.

"The character of the servitude which is due from the proprietors of the soil is here described, and instead of being for the use of the public at large for all purposes, is only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor. [Carrollton R. Co. v. Winthrop] 5 [La.] Ann. 36. * * *" Thereafter, in the opinion, the court commenced a discussion of the Act of 1829, saying: "The first section of the Act shows what was intended to be embraced in it, and at once indicates its scope and object. * * *" Continuing, it set out the provisions of the first section of such statute (quoted herein supra) and further stated: "Here, then, the object of the Act is apparent. It is a matter of public necessity, and to shelter the inhabitants against inundations. *As each proprietor was personally interested in his own protection as well as his neighbors, and as the roads must of necessity pass upon the front of the river or bayous,* and the contribution of each land owner will be as equal as the same can be assessed, and as the property will be of no value without the levee, the legislature had the power to compel such riparian owners to make those levees and roads in front of their plantations without further compensation than the increased value which such works would confer upon their lands.

"But this statute was not intended to apply to those streams or bayous running through a high country not subject to overflows, and where the roads are made directly across the country and not along the windings of the streams.

"This being the character of the country about Washington, the reason of 'the law ceases, and the law itself must be held to have ceased particularly as otherwise it would be in direct conflict with art. 105 of the Constitution, which declares that vested rights shall not be divested, unless for purposes of public utility, and for adequate compensation previously made." (Italics ours.) By the language relative to the Act of 1829 recognition was given to the principle that owners of lands subject to overflow from adjoining streams needed levees and roads (necessarily along the front) for their own protection and they, therefore, were not without compensation when compelled to make and maintain those works on the fronts of their properties.

Although the case of State v. Richardson, 140 La. 329, 72 So. 984, 988, did not involve the establishment of a road, the following comment contained therein as to the servitudes of use along a river or stream is pertinent: "The ownership of the banks of a navigable river, as recognized by C.C. art. 455, and of the alluvion which is formed 'to any soil situated on the shore of a river or stream,' as recognized by C.C. art. 509, is qualified by the conditions imposed

by those articles, and hence the right of use, in both instances, is in the public; but that right is also qualified by the terms in which it is reserved The use must not only be a public use, but it must be the particular public use specified in the reservation, being, in the one case, that which is incidental to the navigable character of the stream and its use as an avenue of commerce, and, in the other, that 'which is required by law for the public use,' and which, where the stream is nonnavigable, is perhaps more restricted. And, save to the extent that it is so qualified, the ownership is as perfect as law can make it."

Our decision in Mayor of Thibodaux v. Maggioli, 4 La.Ann. 73, Ruch v. City of New Orleans, supra, and Village of Moreauville v. Boyer, 138 La. 1070, 71 So. 187, are principally relied on by intervenor in support of its theory that the codal articles impose a free servitude for general road purposes on all property situated along navigable streams and that such servitude is not limited to any specific width.

In the first of those cases the court simply stated " * * * The pleadings concede that the defendant's lots are bounded by the public road passing on the bank of the bayou, and the only question is as to the breadth of land which the plaintiffs have the right to require for the road and levee. This, within limits which have not been exceeded in the present case, is an administrative question, left to the discretion of the local authority, with which nothing requires that we

should interfere." Since a public road had already existed and the land required was for both road and levee purposes, it might well be that erosion had occurred which rendered applicable the provisions of LSA–Civil Code Article 707.

While the court in the Ruch case makes reference to the right of the city to obtain land without compensation for the purpose of enlarging a roadway (which incidentally had been initially expropriated and paid for) it appears from the opinion that "owing to encroachment by the river, the greater portion of this street has been absorbed for levee purposes, thus necessitating the enlargement of the thoroughfare." [43 La. Ann. 275, 9 So. 474.] The case falls squarely within the provisions of Article 707 of the LSA–Civil Code, therein cited by the court and quoted herein supra, which require the giving of a road if a previously existing one has been destroyed.

In Village of Moreauville v. Boyer, supra [138 La. 1070, 71 So. 190], the plaintiff municipality sought the enforcement of an ordinance requiring proprietors along Bayou Des Glaises to leave a space 35 feet across the fronts of their lands for road and sidewalk purposes. The defendant's property had a frontage of 1,700 feet on the bayou across which there existed prior to 1912 a levee and perhaps a road (as to the latter the opinion is not clear). In that year a great flood made necessary the building of a new levee along the bayou, farther back from its bank than was the former

one; and it was along this new levee that the 35-foot space for a road and for sidewalks was demanded by plaintiffs. The defendant tendered a roadway 25 feet in width, and he resisted the demand as to the remaining 10 feet. The court non-suited plaintiff's demands, saying in part: "The defendant's property owes at this time the same servitude it owed before the incorporation of the village, no more. It owes the same servitude that the other property fronting on Bayou Des Glaises outside of the limits of the village owes, no more. This servitude is due, not because the Legislature has said it is due, but because the debt is one inherent in the title to the property. The Legislature is powerless to establish servitudes where none already exist. To do so would constitute a taking, or damaging, of private property without compensation previously made, and would be violative of the Constitution. When this village was established, therefore, the servitude upon defendant's property continued to exist in the same state in which it was before. It was a servitude for a public road along this bayou, no more.

"If, for instance, this village took on a sudden growth, and had need at this place, for the purposes of its commerce, of a space as wide as that which we see on the river front in New Orleans at the head of Canal street, this space could not be taken by virtue of this servitude, but would have to be regularly expropriated; and the Legislature would be powerless to authorize the taking of it without compensation pre-

viously made. In other words, the servitude is one of road, and of such works as are usual on the banks of navigable streams.

"The ordinance in question in this case does not undertake to fix the width for the road irrespective of the sidewalk; and the present suit is not simply for a public road, but for a space sufficient for a road and a sidewalk, without any fixing of the space needed for the road alone. In this condition of the record, it is not possible for this court to give plaintiff judgment for a road, since the function of fixing the width of the public road belongs to the local authorities and not to the courts. * * *"

With further reference to the servitude in the Village of Moreauville case the court, in the opinion, had previously said that: "This servitude is not the same as that by which, according to article 455 of the Code, the banks of rivers are free to the public. It is a very much more onerous one, extending much further inland. That feature of it requiring space for a levee is peculiar to Louisiana. The public road feature is of European origin, and goes back, we believe, to the Romans. It had its birth in the necessity of there being a towage path along the banks of navigable and flotable water courses, Domat, vol. 2, liv. 2, tit. 8, § 2, art. 9, says that by law the public have a right to a towing path along the banks of navigable waters. For the purposes of this case, we need not go back further in the legal history of the statutory recognition of this servitude than the French Ordinance of

1669, referred to at page 123, 4 Mart., O.S., in the case of Renthorp v. Bourg, to the effect that: 'Owners of estates, bordering on navigable rivers, ought to leave along the banks a space, at least 24 feet wide, for a royal road and towing path.' "

Apparently, by this language, the court was recognizing that broad servitudes of road were not authorized by the codal articles, as the earlier cases had stated, but that they had resulted from custom influenced by foreign laws. However, we quote it here primarily for the purpose of showing that the servitudes established by the Code are not nearly so onerous as were those originating from the French and Spanish ordinances.

Our conclusion is that intervenor's theory is not supported by the jurisprudence or codal laws of this state. Neither does it appear to be sound in principle. Under it the Department of Highways could construct an eight-lane paved public highway on and along the west banks of the Red and Mississippi Rivers, running through highlands and lowlands from the Arkansas line above Shreveport to the Gulf of Mexico (a distance approximating 400 miles), without paying any compensation for the required right of way of several hundred feet. On the other hand, if the Department sought to build a paralleling road, of the same type and distance and located one-half mile from the mentioned banks, the land required therefor would have to be expropriated and paid for. Surely, the matter of constructing the road either along the shoreline or a short distance away should not, and cannot legally, be determinative of the question of whether compensation is due for the private property necessary to be taken for that public purpose.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, and that of the district court is now reinstated and made the judgment of this court.

LE BLANC, Justice (dissenting).

I am in accord with the reasons on which the judgment of the Court of Appeal which reversed the judgment of the District Court is based and therefore respectfully dissent.