125 So.2d 673 (1960)
George Douglas PEART
v.
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS.
No. 142.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 11, 1961.
*675 D. Ross Banister, Glenn S. Darsey, Francis X. Vinet, Baton Rouge, for defendantappellant.
Gold, Hall & Skye, by Leo Gold, Gravel, Sheffield & Fuhrer, by David Sheffield, Alexandria, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
Plaintiff, George Douglas Peart, instituted this suit against the Department of Highways of the State of Louisiana to obtain payment for land taken by defendant for highway purposes and for damages occasioned by the taking. Plaintiff was specifically authorized by the Legislature of the State of Louisiana to institute this suit (Act 463 of 1954). Defendant filed an exception alleging the unconstitutionality of Act 463 of 1954, an exception of no right and no cause of action, an exception of res judicata, an exception of prescription, and an answer. All of the exceptions so filed were overruled, and after trial of the case on its merits the trial court rendered judgment in favor of plaintiff for the sum of $1,268.40, representing amounts determined by the court to be the value of the land taken and damages. Defendant has appealed from this judgment and plaintiff has answered the appeal, praying that the amount of the award be increased.
The claim resulted from the appropriation of land by defendant for the relocation and construction of a portion of State Highway No. 5 (designated since the institution of this suit as State Highway No. 1) in Rapides Parish. Prior to the taking, the highway at that particular point ran approximately parallel to and outside the levee which was on the south side of Red River. The relocation of State Highway No. 5 was made necessary because of the set-back of the Red River levee, causing a portion of that highway to be located between the river and the new levee, and consequently to be inundated. Plaintiff owned approximately 80 acres of land bordering on the south side of the river, and a portion of his property was used for the purpose of constructing the new levee and the relocated highway.
Construction of the relocated highway was begun on January 7, 1946, and was completed on December 13, 1946. The record shows that 1.546 acres of plaintiff's land was included in the right-of-way of the new highway, and that 2.818 acres of his land was located between the new highway right-of-way and the toe of the new levee. Also, a little less than one-half acre of plaintiff's land was used as a temporary graveled road while the relocated highway was being constructed.
Defendant appropriated the property included in the right-of-way of the relocated highway and the additional tract used for a temporary road without compensating plaintiff for it. Plaintiff refused to acquiesce in the taking of his land for highway purposes without payment therefor, but *676 the Department of Highways, in a separate action, obtained judgment against plaintiff enjoining him from interfering with the construction of that highway. Following the completion of the new highway and the authorization by the Legislature to institute suit, this action was filed by plaintiff.
Defendant contends primarily that under the provisions of Articles 665 and 707 of the Civil Code of 1870, it is authorized to appropriate plaintiff's property for the relocation of this highway without payment of compensation or damages. Article 665 of the LSA-Civil Code provides:
"Art. 665. Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
"All that relates to this kind of servitude is determined by laws or particular regulations."
In some of the earlier cases decided by the Louisiana Supreme Court, Civil Code Article 665 was interpreted as having created or imposed servitudes for public roads on property lying adjacent to navigable rivers, Hanson v. City Council of Lafayette, 1841, 18 La. 295; Mayor, etc., of Thibodeaux v. Maggioli, 1849, 4 La.Ann. 73; Pecot v. Police Jury, 1889, 41 La.Ann. 706, 6 So. 677; Ruch v. City of New Orleans, 1891, 43 La.Ann. 275, 9 So. 473; Peart v. Meeker, 1893, 45 La.Ann. 421, 12 So. 490, and this construction has been accepted in more recent cases. Powell v. Porter, 1931, 172 La. 681, 135 So. 24; Hebert v. T. L. James & Co., Inc., 1953, 224 La. 498, 70 So.2d 102; Champagne v. Bourque, La.App.1959, 117 So.2d 325.
In Hebert v. T. L. James & Co., supra, however, the Supreme Court placed a substantially restricted interpretation on Civil Code Article 665 when applied to a servitude for road purposes. In that case plaintiffs owned land on Bayou Terrebonne, a navigable stream. Across the front of plaintiffs' land, bordering on the bayou, was a graveled road 30 feet wide which had been in use for many years and which was included as a part of the State highway system. The Department of Highways signed a contract for paving this road and for increasing the width of the road right-of-way to 75 feet. Plaintiffs instituted suit and obtained judgment in the district court enjoining the contractor from proceeding with the work. The Department of Highways, having intervened in the suit, appealed from that judgment, and the Court of Appeal, First Circuit, reversed the decision of the trial court. Writs of review were granted by the Supreme Court, and in due course judgment was rendered by that court reversing the decision of the court of appeal and reinstating the judgment of the district court to the effect that plaintiffs were entitled to be compensated for the land taken. In that case, the Supreme Court, after citing LSA-C.C. Articles 665 and 707, used the following significant language:
"Be that as it may, and irrespective of what influenced the mentioned interpretation of LSA-Civil Code Article 665, it is certain that the servitude so imposed by the codal articles on property bordering a navigable stream was not intended to serve the public for any purpose other than that which is incident to the nature, navigable character, or use of the stream." 70 So.2d 106.
In this case there has been no suggestion that State Highway No. 5, as it originally existed or as relocated, was ever used or was ever intended to be used for any purpose which may have been incident to the nature, navigable character or use of Red River. The evidence establishes that that highway is the main thoroughfare for motor vehicle traffic between the Cities of Alexandria and Marksville and is classified as a primary route in the State highway system. In view of the jurisprudence established by Hebert v. T. L. James & Co., supra, therefore, we conclude that Civil Code Article 665 does not authorize defendant *677 to appropriate this portion of plaintiff's property for the relocation or construction of this highway without compensating plaintiff therefor, since the evidence fails to show that the highway is incident to the nature, navigable character, or use of the stream.
Defendant further contends, however, that it is entitled to appropriate a right-of-way for the relocated highway under the provisions of LSA-Civil Code Article 707, which provides that:
"Art. 707. He who from his title as owner is bound to give a public road on the border of a river or stream, must furnish another without any compensation, if the first be destroyed or carried away.
"And if the road be so injured or inundated by the water, without being carried away, that it becomes impassable, the owner is obliged to give the public a passage on his lands, as near as possible to the public road, without recompense therefor."
In order to apply that article properly we must first determine who is "bound to give a public road on the border of a river or stream." As we have already pointed out, Civil Code Article 665 has been interpreted as creating a servitude for a public road along the border of a navigable river or stream, provided that the road is incident to the nature, navigable character, or use of the stream, and we assume that Article 707 refers to the servitude so created.
The provisions of Article 665 of the Civil Code of 1870 were derived from Article 650 of the Code Napoleon which, incidentally, defines this type of servitude as a "foot-path along navigable or floatable rivers." Code Napoleon, Article 650, as translated in Louisiana Legal Archives, Vol. III, Part I, page 383. A provision almost identical to Article 665 of our present Civil Code was contained in the Louisiana Civil Code of 1808, Article 13. There were no provisions, however, in either the French Code or the Civil Code of 1808 which correspond to those contained in Article 707 of the Civil Code of 1870, the first provisions to that effect being contained in Article 703 of the Louisiana Civil Code of 1825. It is probable that the redactors of the 1825 Code, in drafting Article 703 of that Code (now LSA-C.C. Art. 707) had in mind the above-mentioned provisions of the Code Napoleon and the Civil Code of 1808 relating to this type of servitude. Also, by using the term "who from his title as owner is bound to give a public road on the border of a river or stream," they may have been referring to the provisions of a statute enacted by the Louisiana Legislature in 1818, which provided that all roads fronting on rivers or bayous within the state were declared to be public roads. Act of March 12, 1818; see also, LSA-R.S. 48:491.
Regardless of the particular statute or statutes the redactors of the 1825 Civil Code may have had in mind, however, it is apparent that in adopting Article 707 (then Article 703) it was contemplated that for that article to apply there must be a previously existing road which a person from his title as owner was required to give. This same observation was made by the Supreme Court in Hebert v. T. L. James & Co., supra, where the court said:
"* * * This article seems to contemplate the previous existence of a road, which a person from his title as owner was required to give, and contains no provisions imposing or creating a servitude in the first instance." 70 So.2d 104.
In support of its position here defendant cites and relies on the cases of Ruch v. City of New Orleans, supra, and Mayor, etc., of Thibodeaux v. Maggioli, supra. In the Ruch case plaintiff sought to enjoin the City of New Orleans from appropriating a portion of his property located adjacent to Peters Street, which was a thoroughfare along the Mississippi River levee. Because of erosion, it was necessary for the levee to be moved back, and that required the relocating and reconstruction of a part *678 of Peters Street. A portion of plaintiff's property was appropriated by the city for use in relocating the street. The Supreme Court held that under Civil Code Articles 665 and 707, the City of New Orleans could appropriate plaintiff's property for use in relocating Peters Street without compensation to plaintiff, and that such an appropriation without compensation was a valid exercise of the police power of the city.
In Mayor, etc., of Thibodeaux v. Maggioli, supra, it apparently became necessary to relocate the levee and road along Bayou Lafourche, and in accomplishing this project, the authorities appropriated land and buildings of the defendant without compensating him for the property taken. The Supreme Court held, without citing Civil Code Articles 665 or 707, that plaintiffs were entitled to appropriate that portion of defendant's land without compensating him.
In Hebert v. T. L. James & Co., supra, the Supreme Court made the following comments relative to the Ruch case:
"* * * The case falls squarely within the provisions of Article 707 of the LSA-Civil Code, therein cited by the court and quoted herein supra, which require the giving of a road if a previously existing one has been destroyed." 70 So.2d 107.
With reference to the decision in Mayor, etc., of Thibodeaux v. Maggioli, supra, the Supreme Court, in the T. L. James & Company case, said:
"* * * Since a public road had already existed and the land required was for both road and levee purposes, it might well be that erosion had occurred which rendered applicable the provisions of LSA-Civil Code, Article 707." 70 So.2d 107.
The decisions in the Ruch and Maggioli cases, together with the above-quoted comments by the Supreme Court in the T. L. James & Company case, lend much support to the argument advanced by defendant here. Defendant's position is further strengthened by the fact that the Ruch case has recently been cited with approval by the Supreme Court in Delaune v. Board of Commissioners, 1956, 230 La. 117, 87 So.2d 749 and Board of Commissioners for Pontchartrain Levee District v. Baron, 1959, 236 La. 846, 109 So.2d 441, neither of which cases, however, dealt with the construction or relocation of public roads.
We are unable to determine from the opinion in either the Ruch or the Maggioli cases whether the roads involved therein were incident to the nature, navigable character, or use of streams. If we should assume that the roads were not incident to any such purpose, then we find it difficult to reconcile the principles of law applied in those cases with those applied in the T. L. James & Company case, viz., that the only public road servitude imposed by these articles of the Civil Code is one which is incident to the nature, navigable character, or use of the stream. We are convinced, however, that the new public road or right of passage required by Article 707 was never intended to be more onerous or burdensome than the servitude which the riparian owner was required to give originally.
In Champagne v. Bourque, supra, the Court of Appeal, First Circuit, observed:
"* * * In Hebert v. T. L. James & Company, supra, the Supreme Court, in overruling this Court, held that the provisions of Article 707 was not intended to serve the public for any purpose other than that which is incidental to the nature, navigability or use of the stream, and that the servitude imposed upon property bordering navigable streams does not impose a free servitude for general road purposes." 117 So.2d 327.
In Lyons v. Hinckley, 1856, 12 La.Ann. 655, plaintiff demanded that a road be opened across defendant's property along the bank of Bayou Courtableu, a navigable stream. The Supreme Court, in denying plaintiff's demands, discussed Civil Code Articles 446 and 661 (now LSA-C.C. Arts. *679 455 and 665). In connection with this discussion, and after quoting the provisions of Article 446 (now Article 455), the Court said:
"The character of the servitude which is due from the proprietors of the soil is here described, and instead of being for the use of the public at large for all purposes, is only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor * * *." 12 La.Ann. 657.
It is possible that the above quoted statement from the opinion in the Hinckley case was intended to refer only to the servitude or rights provided in LSA-C.C. Art. 455, but a reading of the entire opinion indicates to us that it was intended to refer to all servitudes imposed by law on property bordering navigable streams, including the road servitude created by LSA-C.C. Art. 665. In the same case the Supreme Court discussed the provisions of Section 9 of Act 31 of 1829, which act specifically required every owner of lands situated on the banks of the Mississippi River and other waters connected therewith to give to the public and to keep constantly in repair a highway at least 25 feet wide on the whole front of his property. Even though the provisions of that section of the 1829 statute (which were not carried into the Revised Statutes of 1870 or into those of 1950) were considerably more specific in imposing road servitudes than are any of the codal articles with which we are now concerned, the Supreme Court said of the 1829 Act:
"But this statute was not intended to apply to those streams or bayous running through a high country not subject to over flows, and where the roads are made directly across the country and not along the windings of the streams.
"This being the character of the country about Washington, the reason of the law ceases, and the law itself must be held to have ceased particularly as otherwise it would be in direct conflict with Article 105 of the Constitution, which declares that vested rights shall not be divested, unless for purposes of public utility, and for adequate compensation previously made." 12 La. Ann. 657-658.
After considering the provisions of Civil Code Articles 665 and 707 and the jurisprudence relating to those articles, we conclude that the public road servitude or the right of passage provided for in Civil Code Article 707 is the same type of road servitude as that described in Civil Code Article 665. As has already been stated, that servitude has been judicially interpreted to be only such a road as is incident to the nature, navigable character or use of the stream.
Since the only public road servitude which a riparian landowner is bound to give on the border of a river or stream is one which is incident to the nature, navigable character, or use of the stream, and since we have concluded that Civil Code Article 707 relates only to that type of public road servitude, it necessarily follows that if an existing public road on the border of a river or stream is destroyed or carried away, or is so injured or inundated by water that it becomes impassable, the landowner is bound to give another public road right-of-way or a passage on his land, without being compensated, only if such road or passage is incident to the nature, navigable character, or use of the stream. He is not bound by that article to give a new right-of-way for general road purposes without being compensated for it.
In this case, since the public road appropriated by defendant is not of the type referred to in Civil Code Articles 665 and 707, we conclude that defendant is not entitled to appropriate any of plaintiff's property for such a road without compensating plaintiff for the land taken and for the damages sustained by plaintiff as a result of the taking.
*680 The evidence also convinces us that the relocated highway which traverses plaintiff's land was not located on the "shores" of a navigable river or on the "border of a river or stream," as required in order to render applicable Civil Code Articles 665 and 707. The facts in this case establish that the right-of-way of the relocated highway is located more than 200 feet from the toe of the new levee. Plaintiff's home, in fact, was located between the new levee and the new highway. We agree with the conclusions reached by the court in Champagne v. Bourque, supra, in which case the court noted that:
"` * * * The location of the roadway in question however cannot be considered to be located on the bank of a bayou or stream, as the roadway in question is a minimum of 125 feet from the Vermilion River, although it does pass closer to the banks of a Coulee which runs in a northeasterly direction from the said river for a portion of the roadway * * *." 117 So.2d 327.
Act 463 of 1954 purports to authorize the filing of this action against the Department of Highways and to provide for a waiver of prescription. Defendant has filed an exception of prescription of two years, and an exception alleging the unconstitutionality of the Act which purports to waive that prescription. The exception of prescription is based on LSA-R.S. 9:5624, which provides:
"When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained."
The project giving rise to this claim was completed on December 13, 1946. Since LSA-R.S. 9:5624 provides that the two year prescriptive period begins to run when the damages are sustained, the latest date upon which this calculation could be based would be the completion date of December 13, 1946. The suit was not instituted until January 21, 1955, so it is apparent that much more than two years elapsed between the time the damages were sustained and the time the suit was filed. The question is presented, therefore, as to whether the prescriptive rights which may have accrued in favor of defendant have been legally waived.
Defendant contends that plaintiff did not need legislative authority to institute this suit and, consequently, the only purpose which could be served by Act 463 of 1954 was to waive the prescription which had already accrued. It is argued that this attempt on the part of the Legislature to waive accrued prescription is contrary to the provisions of Article IV, Section 4, of the Louisiana Constitution of 1921, as amended, LSA, which provides that:
"The Legislature shall not pass any local or special law on the following specified subjects:
* * * * * *
"Granting to any corporation, association, or individual any special or exclusive right, privilege or immunity.
* * * * * *
"Concerning any civil or criminal actions."
Shortly before this suit was instituted, the Supreme Court held that legislative authorization to bring suit against the Department of Highways is not required in suits involving the appropriation of lands for public purposes by that agency. Scorsune v. State, 1954, 224 La. 1031, 71 So. 2d 557. Insofar as Act 463 of 1954 purports to authorize the institution of this suit against the Department of Highways, therefore, the statute appears to have been unnecessary. In our opinion, however, the mere fact that this authorization was unnecessary does not render invalid or unconstitutional the other provisions of the act relating to the waiver of prescription.
Article III, Section 35, of the Louisiana Constitution provides:
"Whenever the Legislature shall authorize suit to be filed against the State *681 it shall provide the method for citing the State therein and shall designate the court or courts in which the suit or suits authorized may be instituted and may waive any prescription which may have accrued in favor of the State against the claim or claims on which suit is so authorized." (Italics added.)
Under the above-quoted provisions of the constitution, it is apparent that the Legislature has the right to waive prescription which may have accrued in favor of the State against claims on which suit is authorized. We do not believe, however, that this right to waive accrued prescription is limited to cases or circumstances where it is necessary for the Legislature to authorize the institution of suit against the State or its agencies. Prescription is a special defense which must be specially pleaded, and we think the Legislature has the right to waive that defense in any suit properly filed against the State or its agencies.
The question of whether legislation authorizing an individual to institute suit against an agency of the State is a local or special law granting an exclusive right or privilege to an individual, in violation of Article IV, Section 4, of the Louisiana Constitution, was considered in Stephens v. Natchitoches Parish School Board, La.App. 1957, 96 So.2d 396, 398 certiorari denied, in which case the Court of Appeal, Second Circuit, said:
"The constitutionality of House Bill No. 113 is attacked upon the ground that such enactment confers upon plaintiff a special or exclusive right, privilege and immunity contrary to the prohibition contained in LSA-Const. Art. IV, Section 4. This contention is likewise without merit. A statute authorizing a particular individual to sue that State or one of its agencies on a claim is not subject to the objection of this section that it grants a special right of privilege, as it adds nothing to its rights, simply giving him permission to have such rights judicially determined. Carter v. State, 49 La.Ann. 1487, 22 So. 400." 96 So.2d 398.
In Mallard v. State, La.App.1939, 194 So. 447, certiorari denied, the Court of Appeal, Second Circuit said:
"The prescriptions established by Arts. 2315 and 3536 of the Civil Code, as is true of nearly all others, are but the arbitrary fixing of the law making power. The limitations therein may be increased or decreased by the same authority that created them. And, in the present case, the law maker elected to provide a lesser time in which plaintiff could assert his claim against the State." 194 So. 447, 451.
In this case we conclude that Act 463 of 1954, providing for the waiver of the prescription which may have accrued in favor of the defendant, was not prohibited by Article IV, Section 4, of the Louisiana Constitution of 1921.
No arguments have been presented by counsel for either party relating to the exception of res judicata, and we assume that this exception has been abandoned. De Grilleau v. Boehm, 1901, 106 La. 472, 31 So. 74; Wier v. Grubb, 1955, 228 La. 254, 82 So.2d 1; Dowden v. State, La.App.1955, 81 So.2d 48; Boddie v. Morehouse Parish Police Jury, La.App.1956, 91 So.2d 463. Our review of the record, however, convinces us that the issues presented in this suit are different from those presented in the action for injunctive relief previously instituted by the Department of Highways, and consequently the elements necessary to support an exception of res judicata are not present here. LSA-C.C. Art. 2286; Durmeyer v. Streiffer, 1949, 215 La. 585, 41 So.2d 226; McKnight v. State, La.App.1953, 68 So.2d 652.
The trial judge awarded plaintiff compensation of $400 per acre for the 1.546 acres taken for the permanent road right-of-way, $50 for the taking of a temporary road right-of-way affecting less than one-half acre of land, and severance damages in *682 the amount of $600 occasioned by the fact that 2.818 acres of plaintiff's land was severed from the main tract and left between the new highway and the new levee, making a total award of $1,268.40. Defendant does not question the amount of the award, but plaintiff has filed an answer to the appeal praying that it be increased. The trial court assigned written reasons for judgment in which he discussed and analyzed the evidence relating to the value of the property taken and the damages sustained by plaintiff. Our review of the facts convinces us that the award made by the trial court was fair and adequate.
For the reasons assigned, therefore, the judgment of the trial court is affirmed.
Affirmed.