132 So.2d 871

**Mrs. Willie Hudson HORNSBY et al.**

v.

**STATE DEPARTMENT OF HIGHWAYS
of Louisiana.**

Nos. 45508, 45511.

June 29, 1961.

Dissenting Opinion Sept. 20, 1961.

Rehearing Denied Oct. 4, 1961.

No. 45508:

D. Ross Banister, Glenn S. Darsey, Francis X. Vinet, Baton Rouge, for defendant-applicant.

Gravel, Sheffield & Fuhrer, Alexandria, for plaintiff-respondent.

No. 45511:

Gravel, Sheffield & Fuhrer, Alexandria, for plaintiff-applicant.

D. Ross Banister, Glenn S. Darsey, Francis X. Vinet, Baton Rouge, for defendant-respondent.

HAMITER, Justice.

The instant action is one of several companion cases which grew out of an appropriation by the Department of Highways of the State of Louisiana, the defendant herein, of certain lands in Rapides Parish for the purpose of constructing a roadway along and outside the re-located

levee which borders Red River, a navigable stream.

Mrs. Willie Hudson Hornsby, a plaintiff in the present suit, owns a tract of land fronting on Red River; and in 1946 a strip of her property, containing .101 acres, was taken for the mentioned roadway. Malcolm T. Hornsby, the other plaintiff herein, operated a dairy business on a part of the property appropriated.

The primary issue raised by this litigation is: May the Department of Highways appropriate land (without paying for it) bordering a navigable river for the purpose of replacing a pre-existing road when the latter has been destroyed by erosion or inundation following a relocation of the levee along the bank of the stream?

The plaintiffs have answered the question in the negative, urging that they are entitled to be reimbursed by the defendant for the value of the land which it took and for damages caused by such taking.

Answering such question in the affirmative, the defendant has assumed the position that under the provisions of Revised Civil Code Articles 665 and 707 it can appropriate property for the purpose of replacing the old inundated roadway. Also, it has specially pleaded the prescription of two years in bar of the action.

The district court overruled the plea of prescription and rendered judgment in favor of Mrs. Hornsby in the amount of $2,000. But it rejected Mr. Hornsby's demand for alleged damages to his dairy business. The judgment was affirmed by the Court of Appeal. See 125 So.2d 673, 682.

The case is presently before this court on writs of certiorari or review granted at the instance of Mrs. Hornsby and the defendant. In the respective applications the former asked only that the amount awarded to her be increased, while the latter prayed that the monetary award be annulled and set aside. Both applications have been argued and considered together.

The mentioned articles of the Revised Civil Code, invoked and relied on by the defendant herein, read: "Art. 665. Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.

"All that relates to this kind of servitude is determined by laws or particular regulations. * * * Art. 707. He who from his title as owner is bound to give a public road on the border of a river or stream, must furnish another without any compensation, if the first be destroyed or carried away.

"And if the road be so injured or inundated by the water, without being carried away, that it becomes impassable, the owner is obliged to give the public a passage

on his lands, as near as possible to the public road, without recompense therefor."

Mrs. Hornsby insists that our decision in Hebert et ux. v. T. L. James and Company, Inc. et al., 224 La. 498, 70 So.2d 102, 103, is decisive of the present litigation, she maintaining that we held therein that the only servitude due under the quoted codal provisions is one intended to serve the public for a purpose incident to the navigable character or to the use of the bordering stream—not one for general road purposes. On the other hand the defendant argues that (1) the Hebert decision is inappropriate to the facts of the instant litigation and (2) the language contained in the opinion of that case supports its position here.

In the Hebert case there was involved a public roadway which had bordered a navigable bayou "since time immemorial", and the Department of Highways was attempting to appropriate additional land in order to widen (not to replace) it. Asserting the right to take the additional land without payment therefor the named authority argued that Revised Civil Code Articles 665 and 707 were similar in their intent and purpose; that the servitudes due thereunder were for the construction of public roads, irrespective of their use in connection with the bordering streams; and that, consequently, the owner of land fronting on a stream was required to yield (without any remuneration to him) so much

of his property as was reasonably necessary for the building of a roadway or for the widening of an existing one. This argument was rejected. As to Revised Civil Code Article 665 (the provisions thereof were derived from Article 650 of the Code Napoleon) we said that it did not convey so broad a right as contended for, but rather that the servitude thereby imposed on property bordering a navigable stream was intended to serve the public for no purpose "other than that which is incident to the nature, navigable character, or use of the stream." Likewise, we concluded that Revised Civil Code Article 707 did not authorize the additional servitude sought and demanded for the roadway's widening; and, with respect thereto, we stated: " * * This article seems to contemplate the previous existence of a road, which a person from his title as owner was required to give, *and contains no provision imposing or creating a servitude in the first instance."* (Italics ours.)

However, in the instant litigation, which involves a factual situation entirely different from that contained in the Hebert case, we think that under the above quoted provisions of Revised Civil Code Article 707 (this article was an innovation in our Civil Code of 1825, it having had no counterpart in the Code Napoleon or our Civil Code of 1808) the Department of Highways is entitled to the relief sought (the author of

this opinion entertained a contrary view at the time of the granting of the writs herein).

With respect to the decision in Mayor, etc., of Thibodeaux v. Maggioli, 4 La.Ann. 73, we said in the Hebert case: " * * * Since a public road had already existed and the land required was for both road and levee purposes, it might well be that erosion had occurred which rendered applicable the provisions of LSA–Civil Code Article 707."

In Ruch v. City of New Orleans, 43 La. Ann. 275, 9 So. 473, which was factually similar to the present cause, this court held that under the provisions of Revised Civil Code Article 707 owners of lands fronting on rivers are bound to furnish without compensation new roadways when pre-existing ones become impassable because of encroachments by such streams. As we observed in the Hebert case: "While the court in the Ruch case makes reference to the right of the city to obtain land without compensation for the purpose of enlarging a roadway (which incidentally had been initially expropriated and paid for) it appears from the opinion that 'owing to encroachment by the river, the greater portion of this street has been absorbed for levee purposes, thus necessitating the enlargement of the thoroughfare.' [43 La. Ann. 275, 9 So. 474.] The case falls squarely within the provisions of Article 707 of the LSA–Civil Code, therein cited by the court and quoted herein supra, which re-quire the giving of a road if a previously existing one has been destroyed."

In Village of Moreauville v. Boyer, 138 La. 1070, 71 So. 187, 190 it was shown that a great flood in 1912 made necessary the building of a new levee along Bayou Des Glaises (and apparently the replacing of a pre-existing roadway). Without mentioning Revised Civil Code Article 707 the court commented: "The defendant's property owes at this time the same servitude it owed before the incorporation of the village, no more. It owes the same servitude that the other property fronting on Bayou Des Glaises outside of the limits of the village owes, no more. This servitude is due, not because the Legislature has said it is due, but because the debt is one inherent in the title to the property. The Legislature is powerless to establish servitudes where none already exist. To do so would constitute a taking, or damaging, of private property without compensation previously made, and would be violative of the Constitution. When this village was established, therefore, the servitude upon defendant's property continued to exist in the same state in which it was before. It was a servitude for a public road along this bayou, no more."

According to its plain provisions, Revised Civil Code Article 707 contemplates the pre-existence of public road servitudes along streams and the roadways' having

been destroyed or rendered impassable by reason of water from such streams. Moreover, the article appears to have general application to all lands owing such servitudes regardless of the manner in which they were originally created. From the record before us we are unable to determine how the pre-existing servitude involved here (the roadway was rendered impassable following the relocation of the levee) was established. It might well be that it was one of those roadways which existed "from time immemorial". Nevertheless its pre-existence along Red River and on Mrs. Hornsby's property is conceded; and, this being true, she was obliged under the provisions of Revised Civil Code Article 707 to furnish another servitude on her land for the replacing public road (it has not been contended here that the new roadway exceeds in size that of the old one).

In view of the above announced conclusion it is unnecessary for us to pass upon the plea of prescription or the question of quantum involved herein.

For the reasons assigned the judgment of the Court of Appeal is affirmed insofar as it rejected the demands of Malcolm T. Hornsby. Otherwise, such judgment is reversed and set aside and this suit is dismissed. Costs of the proceeding in this court shall be borne by Mrs. Hornsby. All other costs shall be paid by both plaintiffs.

SUMMERS, J., dissents and assigns reasons.

SUMMERS, Justice (dissenting).

I concur with the decision of the Trial Court and reasons assigned in the unanimous opinion of the Court of Appeal, Third Circuit. In addition to those reasons, there are certain facts involved in this case which point out more clearly what I consider to be error in the majority opinion. At the outset, and generally speaking, the highway involved in this suit is not alleged to have nor does it have in fact any relationship to the Red River, a navigable stream. The highway is not on the "shores" of the river. Civil Code Article 665, L.S.A. It does not "border" [1] the river and, except to say that it follows the direction of the river in a general way and, at times, is in close proximity to its banks, it does not serve the river's use, nor does the river serve the highway's use. Nowhere is it contended that the highway is located where it is because it relates to the "nature, navigable character, or use of the stream", as this Court has recognized that it should for the riparian owner to owe the servitude for which the State Highway Department contends here. See Hebert v. T. L. James & Co., Inc., 224 La. 498, 70 So.2d 102. To the contrary, it is clearly established that its construction does not relate to the nature, navigable character, or use of the stream.

---

1. La.Civil Code art. 707 (1870). LSA–C.C.

With reference to the particular property involved in the Hornsby case, it is noted that the river's edge is approximately 1,100 feet at its nearest point from the highway right-of-way; the distance from the toe of the levee to the highway right-of-way is slightly in excess of 200 feet. Furthermore, the circumstances affecting the Hornsby property do not involve a relocation of the levee nor was the highway at this point "destroyed or carried away" nor was the road traversing their property "injured or inundated by the water, without being carried away" which are essential factual requisites to permit the application of Civil Code Article 707, L.S.A. The opinion of the majority disregards these essential factual requisites contemplated by the codal articles and in so doing it is to be assumed will permit the appropriation of servitudes for roads in the near vicinity of bodies of water of any character, whether navigable or not, and, thereby, apply articles of the Code to factual situations totally unrelated to their very language and clear intent.

The appropriated area in the Hornsby case simply involved the widening of the existing highway right-of-way approximately 36 feet to 51 feet along a width of 100 feet of the Hornsby property, a situation which makes it strikingly similar to the He-bert case with the exception that in the Hornsby case the previously existing right-of-way had been acquired from the Hornsby ancestors by conventional deed, whereas, in the Hebert case, the road involved had existed from time immemorial—a circumstance that distinguishes the Hornsby case and furnished an additional basis for denying the application of Articles 665 and 707, L.S.A.

No riparian owner and no one involved in the drafting of the pertinent codal articles [2] ever contemplated that the whole of an estate bordering a navigable stream would be subject to a servitude for general road purposes entirely removed from the stream. Clearly that area of the riparian estate along the "shore" or "border" of the stream is taken by the owner subject to the servitude imposed by law (Civil Code Articles 665 and 707, L.S.A.) and its use for public purposes does not entitle him to indemnity; but there the obligation imposed upon his estate by law ceases, and the Constitution of our State, Article I, Section 2, Article XVI, Section 6, L.S.A., assures him that his property outside that area will not be taken without due process of law and until compensation has been paid. In this case neither of these sacramental conditions has been fulfilled. The State has gone upon the

2.  2 Fuzier-Herman, Code Civil Annote, Art. 650 and annotations found therein (1936); 6 Baudry-Lacantinerie et M. Chauveau, Traite Theorique et Pratique de Droit Civil, Sec. 926 et seq. (3d ed.

1905); 3 Aubry et Rau, Droit Civil Francais, p. 8 (5th ed. 1902); 2 Male-ville, Analyse Raisonnee de la Discussion du Code Civil au Conseil d'Etat, Sec. 682 et seq. (3d ed. 1822).

lands in question without the owner's permission and is vigorously resisting the payment of any compensation.

The majority opinion has failed to take into consideration facts which are undisputed and clearly necessary to be considered.

I respectfully dissent.

SUMMERS, J., is of the opinion that a rehearing should be granted.