FORET, Judge.
This is a companion suit to Herman R. White v. Catahoula Parish Police Jury, La. App., 358 So.2d 690, in which a separate judgment is being rendered by us this date. In both suits the plaintiffs, landowners and lessees of property fronting on Black River, sue the Catahoula Parish Police Jury to recover damages resulting from defendant’s unlawful appropriation of a strip of land on which it constructed a new road along the river. The trial court dismissed Bertha J. McPherson’s suit in tort, finding she had granted defendant a servitude, but reserved to her the right to sue in contract, based on a written servitude agreement which she signed. As to the remaining plaintiffs in the McPherson suit, who are owners in indi-visión with her of part of the property, the court dismissed their suit also, but gave no reasons. The court also dismissed the companion suit of Herman R. White, finding the defendant had merely exercised a servitude which it had under LSA-C.C. Article 707, and that White had “tacitly agreed” to the relocation of the road, thereby barring his recovery of compensation or damages. All plaintiffs in both suits appealed.
The substantial issue on appeal is: Is the “taking” authorized by LSA-C.C. Article 707 applicable in this case?
The facts are not seriously in dispute. For decades there had been a public road adjacent to the west bank of Black River in Catahoula Parish. The road varied in width from 15 to 30 feet and curved as it followed the river bank. By the fall of 1975, this gravel road was caving in and dangerous due to the movement of the river. The defendant had the Department of Public Works draw a plan for a new setback road to be a minimum of 200 feet from the top of the river bank to the edge of the road. The jury also hired a “right-of-way” man to obtain written servitude agreements from the landowners affected. Some of the landowners signed these form instruments.
Bertha J. McPherson refused to sign the servitude agreement as prepared by defendant. She had her attorney make some changes and then signed the changed contract on June 28, 1976, and gave it to the defendant’s representative. Essentially, she agreed to grant the servitude only on condition that certain specified requirements are met, including payment of damages to her soybean crop.
Work was begun on the new road in 1976. It was substantially complete by the time these suits were filed respectively in January and March of 1977. The new road is straighter than the old road and is on a 60-foot right-of-way. It is not adjacent to the curving river bank. At some points it is *687 as much as 300 feet from the bank. The Police Jury admitted it made the new road straighter and set it back from the river bank for reasons of safety and economy.
In January of 1977, the Police Jury passed a resolution denying compensation to landowners and lessees for damage to soybean crops caused by construction of the new road. This is what precipitated Mrs. McPherson’s suit.
In March of 1977, after these two suits had been filed, the Police Jury recorded a “Notice of Appropriation” covering all of the land needed for this new road, including that in dispute here.
We first address the question of the applicability of LSA-C.C. Article 707, which reads:
“He who from his title as owner is bound to give a public road on the border of a river or stream, must furnish another without any compensation, if the first be destroyed or carried away.
“And if the road be so injured or inundated by the water, without being carried away, that it becomes impassable, the owner is obliged to give the public a passage on his lands, as near as possible to the public -road, without recompense therefor.”
Plaintiffs-appellants rely on the cases of Hebert v. T. L. James & Co., 224 La. 498, 70 So.2d 102 (1954), and Peart v. State, 125 So.2d 673 (La.App. 3 Cir. 1961), both of which held Article 707 inapplicable. In Hebert, the Department of Highways was attempting to appropriate additional land in order to widen, and not to replace, an existing public roadway. In Peart v. State, supra, the Department of Highways was relocating a public highway, La. Highway No. 5 (now redesignated as State Highway No. 1) which was necessitated by the relocation of a levee along the Red River in Rapides Parish.
In our view, the case at bar is controlled by the Supreme Court case of Hornsby v. State Department of Highways, 241 La. 989, 132 So.2d 871 (1961). In Hornsby, the Supreme Court reversed this Court’s decision which had rendered judgment in favor of the landowner whose property was taken. (See our decision at 125 So.2d 673, 682.) Our decision in Hornsby was rendered as a companion decision with Peart v. State. Writs of certiorari were not applied for in Peart; however writs were applied for in Hornsby, and were granted. In our view, the Supreme Court, in its Hornsby decision, reversed, by inference, our decision in Peart. In Hornsby, the Supreme Court obviously disagreed with the language of Hebert and Peart wherein those cases stated that the landowner is bound to give another public road right-of-way, without compensation, only if such road or passage is incident to the nature, navigable character, or use of the stream, and the landowner is not bound by Article 707 to give a new right-of-way for general road purposes without being compensated therefor. In Hornsby, the Supreme Court stated, 132 So.2d at Page 874:
“According to its plain provision, revised Civil Code Article 707 contemplates the pre-existence of public road servitudes along streams and the roadway’s having been destroyed or rendered impassable by reason of water from such streams. Moreover, the article appears to have general application to all lands owing such servitudes regardless of the manner in which they were originally created. From the record before us, we are unable to determine how the pre-existing servitude involved here . . . was established. It might well be that it was one of those roadways which existed ‘from time immemorial’. Nevertheless, its preexistence along Red River and on Mrs. Hornsby’s property is conceded; and, this being true, she was obliged under the provisions of revised Civil Code Article 707 to furnish another servitude on her lands for the replacing public road.”
The dissenting opinion in Hornsby seems to indicate quite clearly that the facts of that case are strikingly similar to the case at bar, except that in Hornsby the road was rendered impassable following the relocation of the levee, whereas in the instant case the road was rendered impassable by *688 those very facts given in Article 707 “destroyed or carried away” . . . “if the road be so injured or inundated . that it becomes impassable”. The dissenting opinion continued to note that in Horns-by the river’s edge was approximately eleven hundred feet at its nearest point from the highway right-of-way, and that the distance from the toe of the levee to the highway right-of-way was slightly in excess of two hundred feet. Further, in Hornsby the existing highway right-of-way was widened by approximately thirty-six to fifty-one feet. So Hornsby involved not only the relocation of an existing road, but also a widening of same. The tenor of Justice Summers’ dissent is that if the facts of the case at bar had been present in Hornsby, that he may very well have agreed with the majority. He states, at Page 874, that the circumstances affecting the Hornsby property did not involve a highway “destroyed or carried away”, nor was the road traversing plaintiff’s property “injured or inundated by the water, without being carried away”, which he stated to be essential factual requisites to permit the application of Civil Code Article 707.
The appellants complain that the new road does not follow the banks of the river, and has been straightened considerably. We note that the photographs and the plat of survey introduced do not support appellants’ contention. The photographs are particularly impressive because they show rather clearly that the replacement road, which is set some two hundred feet back from the river bank, clearly follows the curves of the river. We believe that it would have been rather imprudent for the Police Jury to build a replacement road immediately adjacent to the old road. We feel that for us to hold that it was built too far from the old road to be an Article 707 situation, would be to substitute our judgment for that of the Police Jury and the Department of Public Works, who designed the new road, presumably in accordance with good engineering practices, considering the propensities of most of our rivers to erode their banks. The redactors of our Civil Code wisely envisioned this very problem when they adopted Article 707.
Having concluded that the Police Jury legally appropriated the property of the plaintiffs, we need not discuss whether a binding agreement was entered into between Mrs. McPherson and the Police Jury. LSA-C.C. Article 707 gave the Police Jury the right to appropriate plaintiffs’ land for the purposes for which it did. However, we are of the opinion that the fact that the Police Jury had the power to appropriate plaintiffs’ land does not mean that the landowners cannot recover for special damages which they may have sustained as a result of the appropriation. For example, if fences were destroyed, standing crops were destroyed, other improvements were destroyed, or expenses incurred for relocation of improvements on the land taken, certainly the landowners should be entitled to recover for these or similar damages. We do not construe Article 707 to mean that whatever damage the landowner may sustain, he is absolutely precluded from recovery therefor.
In the interest of justice, we prefer to remand these eases to the district court for the introduction of additional evidence for determination by the trial judge of any special damages to which each of the plaintiffs is entitled.
Costs of this appeal are assessed one-half against the Police Jury, and one-half against the plaintiffs, collectively. Assessment of costs in the district court must await a final judgment there.
AFFIRMED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.
CULPEPPER, J., dissents and assigns written reasons.